OCEANA A. BANCROFT, Appellant, *v.* HOME BENEFIT ASSOCIATION OF NEW YORK, Respondent.

Where, by the terms of a policy or certificate of life insurance, the statements made by the insured in the application were made warranties and the application contained this question, "Have you received any wound, hurt or serious bodily injury?" to which the appellant replied "no," *held*, that the words "hurt" and "wound," as used, meant an injury to the body causing an impairment of health or strength, or rendering the person more liable to contract disease or less able to resist its effects; and that the fact the insured, before the application, had received a slight injury, which the evidence showed undisputedly had no such effect, was not a breach of the warranty.

*Bancroft* v. *Home Benefit Assn.* (22 J. & S. 332), reversed.

(Argued February 25, 1890; decided March 18, 1890.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made the first Monday of December, 1886, which affirmed a judgment in favor of defendant entered upon the decision of the court on trial at Special Term.

The nature of the action and the facts are sufficiently stated in the opinion.

*William G. Wilson* for appellant. The court below erred in its interpretation of the statute. (*Cushman* v. *U. S. L. Ins. Co.*, 70 N. Y. 72; *Fitch* v. *A. P. L. Ins. Co.*, 59 id. 557.) It was error in the court below to find that the insured received a wound, hurt or serious bodily injury within the

meaning of the contract. (*Ins. Co.* v. *Wilkinson*, 13 Wall. 222.)

*Francis Lawton* for respondent. The certificates sued upon declare that the representations and agreements contained in the application for the certificates are a part of the contract between the parties. Hence, the certificates and application are to be read together as one instrument. (*Cushman* v. *U. S. L. Ins. Co.*, 63 N. Y. 407; *Burritt* v. *S. Ins. Co.*, 5 Hill, 188; *Worsley* v. *Wood*, 6 T. R. 710; *M. B. L. Ins. Co.* v. *Miller*, 2 Ins. L. J. 109; *Jennings* v. *C. C. Mut. Ins. Co.*, 5 Den. 75; *Patch* v. *P. M. L. Ins. Co.*, 44 Vt. 481; *Braunstein* v. *A. D. Ins. Co.*, 2 Big. 610; *Douglas* v. *K. L. Ins. Co.*, 83 N. Y. 503; Bliss on Life Ins. § 58; *A. L. Ins. Co.* v. *France*, 1 Otto, 510; *Jeffries* v. *L. Ins. Co.*, 22 Wall. 47; *Foote* v. *A. L. Ins. Co.*, 51 N. Y. 571; *Edington* v. *A. L. Ins. Co.*, 77 id. 464; 100 id. 586; *Dwight* v. *G. L. Ins. Co.*, 103 N. Y. 346.)

FOLLETT, Ch. J. April 28, 1885, John S. Bancroft became a member of defendant's life department and received two certificates, by each of which the defendant promised to pay on proof of his death, during the continuance of the certificate, $5,000 to the insured's wife, the plaintiff, from the benefit fund of the life department. Each certificate contains the following provisions: " In consideration of the representations and agreements made in the application herefor, and which is a part of this contract, and of each of the statements made therein, which  *  *  *  every person accepting or acquiring any interest in this contract, hereby adopts as his own, admits to be material, and warrants to be full and true, and to be the only statements upon which this contract is made."

" 1. If this certificate  *  *  *  has been or shall be obtained through misrepresentation, fraud or concealment *  *  *  then the same shall be absolutely void."

The application contained this question and answer:

" 3. Q. Have you received any wound, hurt or serious bodily injury ? A. No."

The application contained the following declarations : "I do hereby declare that all the particulars and statements made by me in connection with this application are true to the best of my knowledge and belief, and I do hereby acknowledge, consent and agree that any untrue or fraudulent statement made by me, or to any medical examiner for said association, or any concealment of facts by me, shall forfeit and cancel all rights to any benefit under the above-named contract, and expressly waive all provisions of law forbidding any physician who has attended me from disclosing all information which he thereby acquired."

"I further declare and agree that my answers to the questions put by the medical examiner are correct and true, and that I am the person who signed the application on the opposite side and was examined as stated."

September 19, 1885, the insured died, and this action was brought to recover the amounts insured by the certificates, and was defended at the trial on the sole ground that the answer to the question above quoted was untrue. The issue was tried before the court without a jury, which found as facts that February 21, 1884, the insured received a "wound" (fifth finding), a "hurt" (sixth finding), and a "serious bodily injury" (seventh finding). The eighth finding of fact described with particularity the wound, hurt and serious bodily injury found in the fifth, sixth and seventh findings, and is as follows :

"Eighth. That prior to the making and delivery of the said application, and on or about the 21st day of February, 1884, the said John S. Bancroft, while engaged in fencing, did receive a blow from a foil on the throat in the neighborhood of or upon the Adam's apple ; that in a few seconds thereafter he raised a little blood ; that said blow produced an extravasation of the submucus membrane just over the cricoid cartilage in the posterior part of the throat, almost opposite or behind, but a little below the Adam's apple ; that the force of said blow produced an abrasion, wound or hurt on the inside of the wind-pipe ; that shortly thereafter the said John S. Bancroft was confined to his bed the whole or the greater part of three

days, and during that time was attended by a physician, and was by him treated with the same treatment that he gave persons who have the complaint of spitting of blood, but I find that the treatment was not for the complaint of spitting of blood."

In the ninth finding the court found that the insured concealed from the defendant the injury described in the fifth, sixth, seventh and eighth findings, and as a conclusion of law decided that the plaintiff, by reason of the answer given, was not entitled to recover. The plaintiff excepted to the fifth, sixth, seventh and ninth findings of fact and to this sentence contained in the eighth finding : " That the force of said blow produced an abrasion, wound or hurt on the inside of the wind-pipe," and now insists that they are without any evidence tending to sustain them and are reviewable in this court as questions of law.

On the evening of February 21, 1884, the insured took at his own house a lesson in fencing with foils. His body was protected by a thickly padded buckskin jacket fitting closely and high about his neck, and his face was shielded by a visor which were specially designed for the protection of persons engaged in this exercise. At the end of the exercise he spat, as found, " a little blood," and immediately called his family physician, who after an examination expressed the opinion that his throat had been hit by the button of the foil, though no external mark or evidence of injury could be found. The insured was not conscious of having been hit and was quite confident that he had not been. The physician made a careful examination, but found no evidence that the blood came from the throat or lungs. After the examination the patient was put to bed and treated in the manner and for the time described in the eighth finding of fact. No other hemorrhage occurred. March 2, 1884, his throat was examined by Dr. Jarvis, a specialist, who testified that by the use of a powerful light and mirrors he discovered the injury, which he described in the language used in the eighth finding. All the evidence descriptive of the injury and its effects was given by Doctors

Wright, the attending physician, and Jarvis, the specialist, who were called by the defendant, and by the plaintiff called in her own behalf. Dr. Wright testified that he had been the insured's family physician for ten or twelve years prior to May, 1885. After having described the injury and its effects, he testified: "I was his attending physician for some time after this (the accident), until he moved away from that part of the city in May, 1885. During the time that I attended him as a physician he was not at any time seriously ill with any complaint; he was not, to my knowledge, afflicted with any organic or chronic disease at that time; I do not believe that he was. * * * Q. After all you had seen of this patient at the time of the injury, immediately after the injury, and during the time you attended him as a physician, would you call that a serious injury? A. The result seems to justify the supposition that it was not a serious injury, but a man bleeding from the throat or lungs is always regarded as possibly a serious case; physicians always give them the benefit of the doubt under such circumstances, as though it was certainly serious. Q. On the final result of this, would you call it a serious injury? A. I would not, for the patient got over it."

Dr. Jarvis testified: "Q. Did you regard this as a serious injury? A. I cannot say that I took it in that light; it was simply to find out what the trouble was that I examined him. Q. Was it your opinion he would lose the effects of it? A. I thought it would disappear."

The plaintiff testified that her husband spat no blood between February 21, 1884, and the date of his death. There is no conflict in the evidence, and there is none justifying the inference or finding that the injury was serious or that it was a hurt or wound within the meaning of the contract.

September 14, 1866, the Connecticut Mutual Life Insurance Company insured the life of Mrs. Wilkinson. The application, which was a part of the contract, and its statements warranties, contained this question and answer: "Q. Has the party ever met with any accidental or serious personal injury, if so, what was it? A. No." The insured died in 1869, and

in the action on the policy the jury returned a special finding that in 1862 the insured fell from a tree, was injured in consequence thereof, was sick for some time, but that she recovered, and that the injury had no permanent influence on her health. The fact that the insured had fallen and had been somewhat injured was not disclosed to the insurer. It was held that the injury was not a serious one within the meaning of the contract. ( *Wilkinson* v. *Conn. Mut. Life Ins. Co.*, 30 Iowa, 119.)

At about the same time the Union Mutual Life Insurance Company of Maine insured the same life. This application was also a part of the contract, and its statements warranties, contained this question and answer: " Q. Has the party ever had any serious illness, local disease or personal injury; if so, of what nature and at what age? A. No." The accident which had happened to the insured was not disclosed to the insurer. On the trial of the issue joined the jury returned a special finding that in 1862 the insured fell from a tree, was injured, but not seriously, and that its effects passed away without subsequently affecting her health. The fact that the insured had so fallen was not disclosed to the insurer. It was held that the injury described by the evidence and found by the jury was not a serious one within the meaning of the contract, and that the plaintiff was entitled to recover. ( *Wilkinson* v. *Union Mut. Life Ins. Co.*, 2 Dillon, 570; 13 Wall. 222.)

In discussing the case, the meaning of the term "serious bodily injury," when used in life policies, was discussed. Mr. Justice Miller speaking for the Supreme Court said: " On the first branch of the case the court said to the jury that if the effects of the fall were temporary, and had entirely passed away before the application was taken, and if it did not affect Mrs. Wilkinson's health or shorten her life, then the non-disclosure of the fall was no defense to the action. On the other hand, if the effects of the fall were not temporary, and remained when the application was taken, or if the fall affected the general health, or was so serious that it might affect the health

or shorten life, then the non-disclosure would defeat recovery, although the failure to mention the fall was not intentional or fraudulent.

" It is insisted by the counsel for the defendant that if the injury was considered serious *at the time*, it is one which must be mentioned in reply to the interrogatory, and that whether any further inquiry is expedient on the subject of its permanent influence on the health is for the insurer to determine before making insurance. But there are grave and obvious difficulties in this construction. The accidents resulting in personal injuries, which, at the moment, are considered by the parties serious, are so very numerous that it would be almost impossible for a person engaged in active life to recall them at the age of forty or fifty years, and if the failure to mention all such injuries must invalidate the policy, very few would be sustained where thorough inquiry is made into the history of the party whose life is the subject of insurance. There is, besides, the question of what is to be considered a serious injury at the time. If the party gets over the injury completely without leaving any ill consequences in a few days, it is clear that the serious aspect of the case was not a true one. Is it necessary to state the injury and explain the mistake to meet the requirements of the policy?

" On the other hand, when the question arises, as in this case, on a trial, the jury and not the insurer must decide whether the injury was serious or not. In deciding this are they to reject the evidence of the ultimate effect of the injury on the party's health, longevity, strength and other similar considerations? This would be to leave out of view the essential purpose of the inquiry, and the very matters which would throw most light on the nature of the injury, with reference to its influence on the insurable character of the life proposed.

" Looking, then, to the purpose for which the information is sought by the question, and to the difficulty of answering whether an injury was serious in any other manner than by reference to its permanent or temporary influence on the

health, strength and longevity of the party, we are of opinion that the court did not err in the criterion by which it directed the jury to decide the interrogatory propounded to them."

The words "hurt" and "wound," as used in the application, mean an injury to the body causing an impairment of health or strength, or rendering the person more liable to contract disease or less able to resist its effects.    No such consequences followed from the hurt sustained by the insured.    A cut on the face, finger, or on any part of the body from which blood flows, though healing in a few days and leaving no evil consequences, is a hurt or wound, but not within the meaning of the contract under consideration.

There being no evidence tending to sustain the findings upon which the conclusion of law is based, the judgment should be reversed and a new trial granted, with costs to abide event.

All concur.

Judgment reversed.