## PROVIDENCE LIFE ASSURANCE SOCIETY *v.* REUTLINGER.

### Opinion delivered March 10, 1894.

1. *Life insurance—Warranty.*

   The answer of the insured to a question asked by the medical examiner is a warranty if the policy of insurance expressly so stipulates.

2. *When warranty broken.*

   In a policy of life insurance the answers to questions asked by the medical examiner were made warranties ; and among such questions and answers were the following : " Have you ever had any serious illness or personal injury, or ever undergone any surgical operation ? " to which the applicant answered, " No." He was then asked, " When and by what physician were you last attended, and for what complaint ? " and answered that he had never called a doctor in his life. *Held*, that proof of previous attendance on him by a physician upon six successive days, about three weeks before the application was made, would establish a breach of warranty, though his complaint was not of a serious nature, and did not affect his general health.

3. *Agent's fraud—Estoppel.*

   Where a medical examiner has authority, express or apparent, from an insurance company to fill up blanks for answers to questions, and does so by writing false answers, and thereafter procures the signature of the applicant thereto, after he had given correct answers to the questions, and the company afterwards receives the premiums and issues a policy, the company will, upon the death of the insured, be estopped from

insisting on the falsity of the answers, although warranted to be true; but if the applicant discovers that a fraud has been perpetrated on him and the company, he cannot hold the policy without approving the action of the agent.

Appeal from Pulaski Circuit Court.

ROBERT J. LEA, Judge.

*Rose, Hemingway & Rose* for appellant.

1.   The statement, by the terms of the application and of the policy, was made a *warranty*, and, unless literally true, the policy was void.   22 Wall. 47; 91 U. S. 510; Cook, Life Insurance, sec. 15; Bliss, Life Ins. secs. 34, 63-4-5, 126, 128, 129, 132; 13 Atl. Rep. 4; 50 N. J. Law. 287; 3 Gray, 580; 4 H. of L. Cases, 484; 2 Cromp. & M. 348; 6 C. B. (N. S.) 437; 6 Jur. (N. S.) 826; 39 Ind. 475; 1 McA. 41; 1 Cent. L. J. 597; 3 Dill. 217; 4 Daly, 296; 2 N. Y. Sup. Ct. 247; 61 N. Y. 571; 50 How. Pr. 367; 2 Hun, 402.   See the following cases, which deal especially with false statements relative to attendance by physicians:   5 Bing. 503; 38 L. J. Chy. 132; 3 Bigelow L. Ins. Rep. 264; 3 *id.* 199; 1 Foster & F. 735; 25 Hun, 442; 54 Hun, 294; 17 Minn. 491; 10 Am. Rep. 166; 49 N. J. Law. 587; 153 Mass. 176; 2 Rob. 455; 8 Ont. App. 716; Berryman, Ins. Dig. 802.   Against this array counsel oppose nothing except 32 N. W. 610, where it is held that, in order to vitiate the policy, it must appear that a physician had been called for *a serious illness*.

2.   It was error to tell the jury that they might find, from the mere fact that Reutlinger spoke English with a foreign accent, that he was not bound by his written contract.   There was no proof of imposition or fraud.   2 Whart. Ev. sec. 1028; 117 U. S. 519; 78 Ind. 136; 6 Black. 380; 29 Ind. 580; 82 Pa. St. 202; 3 Ind. 449; 18 Kas. 529; 100 Ill. 298; 79 Ind. 604; 56 N. Y. 137; 70 Ind. 19; 55 N. H. 593; 54 Ill. 196; 72 Ind. 533; 29 Iowa, 498; 12 Neb. 433; 118 Mass. 109; 117 U. S. 534.

3. If the facts contended for by counsel were true, their position would not be improved, save they might recover the premium. If Reutlinger was so ignorant of English that he did not understand the doctor, and the doctor did not understand him, then there was no *aggregatio mentium*, and no contract. 117 U. S. 534; 50 Pa. St. 299; 88 Am. Dec. 544; 146 U. S. 483.

*Caruth & Erb* and *Morris M. Cohn* for appellee.

1. Insurance contracts, printed to suit the insurance companies, using terms chosen by them,.and full of dangerous pitfalls, are *reasonably* construed in favor of the assured. 32 N. W. 610; 111 U. S. 335; 10 N. E. 242, 247; Parson's Cont. vol. 2, ch. xv, sec. 471; Bacon Ben. Soc. sec. 203; 12 Wall. 404; 54 Ark. 376; 104 U. S. 197; 21 Atl. Rep. 680. Taking the terms used by the application and the assured's answer, and construing them together, they *mean* simply that assured had never called a doctor for a *serious* complaint in his life. Conceding the answer to be a warranty, there was no breach. 2 Parson's Cont. p. 468, note; 2 So. Rep. 125, 131; 59 Wis. 162; Bac. Ben. Soc. p. 268; 104 U. S. 197, 204; 32 N. W. 610; 24 Fed. Rep. 670; 41 *id.* 506; 1 Atl. Rep. 340; 110 Pa. St. 84; 23 N. E. Rep. 997; 2 Dill. 570; 13 Wall. 222; 112 U. S. 250. Mere temporary disorders, which have no bearing upon the general health, do not come within the warranty. Berryman's Dig. p. 1483, *et seq.;* 73 Ill. 586; 93 Ind. 24; 70 N. Y. 72; 85 Ill. 537; 20 Fed. Rep. 596 and note; 3 Cent. L. J. 302; 2 So. 125; 59 Wis. 162; 73 Ill, 586. Great array of authority sustains the position that when an insurance company asks about complaints one has had, and in the same connection by what physician one has been attended, the physician referred to means one who has attended for some serious complaint, going to man's constitution, or seriously affecting his health.

2.   The assured's answer was not a warranty, but a representation, and his belief and good faith are elements which might have been considered.   95 U. S. 673; 111 U. S. 335; 2 So. Rep. 125; 80 Ala. 467; 88 Cal. 497; 119 Ill. 474; 25 N. E. Rep. 299.

3.   There was no error in the third instruction. 104 U. S. 197; 32 N. W. 610, 614: 52 Ark. 11.

BATTLE, J.   Appellee commenced this action against the Providence Savings Life Assurance Society of New York upon a policy of insurance which was issued by it to her for $7,000 upon the life of her husband, Solomon Reutlinger, he having died.   It resulted in a verdict and judgment in her favor.   The defendant appealed.

The policy begins as follows:   "In consideration of the stipulations and agreements in the application herefor, and upon the next page of this policy, all of which are a part of this contract," etc.   The application which is referred to in the policy was signed by the appellee and her husband, and contains the following language : "We further declare and warrant jointly and severally that all the foregoing statements and representations, as well as those made or to be made to the medical examiner, or in any certificate of health hereafter given to the society by me, are and shall be true and shall be the basis of the contract with the society if a policy be issued or renewed thereon, and that, if any untrue or fraudulent statement or representation shall have been made, or if at any time any covenant, condition or agreement herein shall be violated, said policy and insurance shall be null, void and of no effect."

Among the questions propounded by the medical examiner to the insured was the following :   "When and by what physician were you last attended, and for what complaint?"   To which he replied :   "Never called a doctor in his life."   Following the questions

and answers in the medical examination, which were reduced to writing, are the following words in large type: "I hereby declare that I have read and understand all the above questions put to me by the medical examiner, and the answers thereto, and that the same are warranted by me to be true, and that I am the same person described as above." And just beneath these words is the signature of Solomon Reutlinger, the insured.

The appellant, in its answer, among other things, set out the warranties contained in the application, and the aforementioned question and answer, and stated that about three weeks before the application was made the insured had been attended by a regular physician upon six successive days, and that, by reason of the false answer, the policy was void. The evidence adduced at the trial tended to prove these allegations.

The main questions in the case are: Was the answer to the question an absolute warranty, or in the nature of a representation? If a warranty, was there a breach of it?

1. As to warranty in policy of life insurance.   As a general rule, a warranty is a stipulation expressly set out, or by inference incorporated, in the policy, whereby the assured agrees "that certain facts relating to the risk are or shall be true, or certain acts relating to the same subject have been or shall be done." Its purpose is to define the limits of the obligation assumed by the insurer, and it is a condition which must be strictly complied with, or literally fulfilled, before the right to recover on the policy can accrue. It is not necessary that the fact or act warranted should be material to the risk; for the parties by their agreement have made it so. Lord Eldon says: "It is a first principle in the law of insurance that, if there is a warranty, it is a part of the contract that the matter is such as it is represented to be. The materiality or im-

materiality signifies nothing.   The only question is as to the mere fact."

On the other hand, representations are no part of the contract of insurance, but are collateral or preliminary to it.   When made to the insurer at or before the contract is entered into, they form a basis upon which the risks proposed to be assumed can be estimated. They operate as the inducement to the contract.   Unlike a false warranty, they will not invalidate the contract, because they are untrue, unless they are material to the risks, and need only be substantially true.   They render the policy void on the ground of *fraud*, "while a non-compliance with a warranty operates as an express *breach* of the contract."

Statements or agreements of the insured which are inserted or referred to in a policy are not always warranties.   Whether they be warranties or representations depends upon the language in which they are expressed, the apparent purpose of the insertion or reference, and sometimes upon the relation they bear to other parts of the policy or application.   All reasonable doubts as to whether they be warranties or not should be resolved in favor of the assured.   *Continental Life Ins. Co.* v. *Rogers*, 119 Ill. 474; *Fitch* v. *American Popular Life Ins. Co.* 59 N. Y. 557; *Moulor* v. *American Life Ins. Co.* 111 U. S. 335; *Campbell* v. *New England Life Ins. Co.* 98 Mass. 389; *Alabama Gold Life Ins. Co.* v. *Johnston*, 80 Ala. 467; *National Bank* v. *Ins. Co.* 95 U. S. 678.

Parties to contracts for life insurance have the right to stipulate that the idemnity shall be recoverable only on the conditions or contingencies agreed upon by them. When entered into, they should be construed and enforced according to the intent of the parties.   In arriving at that intention, the nature of the contract and the object to be attained should be considered.   Doubtful

words should be so construed as to give to each its due force in the furtherance of the main purpose of the contract. If any interpretation of the contract is so absurd and unreasonable as to raise the presumption that such a result could not have been within the intention of the parties, it should be discarded, and one adopted more consistent with reason and probability.

The Supreme Court of Pennsylvania expresses our view as to the construction of contracts of insurance in *Home Mutual Life Association* v. *Gillespie*, 110 Pa. St. 84, in this language: "Whilst, however, the insured is held for the exact truth of his warranty as a condition of his recovery, it must first be ascertained, under the ordinary rules of construction, what the thing is that is warranted; and, this being ascertained, the insured is held to a full and literal performance of it. But the words of a warranty, or of a contract of insurance, must receive a reasonable interpretation. When the words of any contract have a clear meaning, consistent with, and relevant to, its object and purpose, the intention of the parties, in the absence of fraud or mistake, cannot be shown to override the meaning. But if the words employed, in their liberal or unrestricted sense, are inconsistent with the main and obvious purpose of the instrument, or are foreign to the purpose of its provisions, they may, if reasonably susceptible, receive such interpretation as accords with the object in view and the clear intent of the parties. If the natural interpretation, looking to the other provisions of the contract, and to its general object and scope, would lead to an absurd or unreasonable conclusion, as such a result cannot be presumed to have been within the intention of the parties, such interpretation must be abandoned, and that adopted which will be more consistent with reason and probability."

Where questions propounded to an applicant for insurance upon his life as to his physical condition are in such terms as include the most trivial ailments or injuries, they should be interpreted as referring only to such illness or injuries as affect the risk to be assumed, unless they are in words which exclude such interpretation. The presumption is that trivial ailments or injuries are not within the contemplation of the parties, and that the questions, in the absence of words directing attention to them, are not asked with the view or purpose of ascertaining the existence of the same. The answers of the applicant should be interpreted in the same manner as the questions eliciting them, that is to say, as responsive to the questions in the sense in which they are asked. *Home Mutual Life Association* v. *Gillespie*, 110 Pa. St. 84; *Cushman* v. *U. S. Life Ins. Co.* 70 N. Y. 72; *Wilkinson* v. *Connecticut Mutual Life Ins. Co.* 30 Iowa, 119; *Insurance Co.* v. *Wilkinson*, 13 Wall, 222; *Connecticut Life Ins. Co.* v. *Union Trust Co.* 112 U. S. 250; *Bancroft* v. *Home Benefit Association*, 120 N. Y. 14.

In *Cushman* v. *U. S. Life Ins. Co.* 70 N. Y. 72, "it was decided that the application for the insurance was a part of the policy, and that the answers to the questions therein contained were therefore warranties." It was claimed that there was a breach of warranty in answering "No" to the question in the application, "whether the applicant had ever had disease of the liver." In speaking of this question, the court said : "In construing contracts, words must have the sense in which the parties used them, and, to understand them as the parties understood them, the nature of the contract, the objects to be attained, and all the circumstances must be considered. By the questions inserted in the application, the defendant was seeking for information bearing upon the risk which it was to take, the prob-

able duration of the life to be insured. It was not seeking for information as to merely temporary disorders or functional disturbances, having no bearing upon general health or continuance of life. Colds are generally accompanied with more or less congestion of the lungs, and yet in such a case there is no disease of the lungs which an applicant for insurance would be bound to state. So most, if not all, persons will have at times congestion of the liver, causing slight functional derangement and temporary illness, and yet in the contemplation of parties entering into contracts of life insurance, and having regard to general health and the continuance of life, it may safely be said that in such cases there is no disease of the liver."

In *Wilkinson* v. *Connecticut Mutual Life Ins. Co.* 30 Iowa, 119, the assured, in reply to the question, " Has the party ever met with *any* accidental or serious personal injury," answered " No." She had, about four years before that, fallen from a tree, but received no serious injury. In commenting on this question and answer, the court said : " The defendant claims that if the insured 'ever met with *any accidental * * injury*,' that will bar a recovery, because the application is a warranty that she never did. In this construction we do not concur. The language of the question is to have a reasonable construction, in view of the purposes for which the question was asked, It must have reference to such an accidental injury as probably would or might possibly have influenced the subsequent health or longevity of the insured. It could not refer, and could not be understood by any person reading the question for a personal answer to refer, to a simple burn upon the hand or arm, in infancy ; to a cut upon the thumb or finger, in youth ; to a stumble and falling, or the sprain of a joint, in a more advanced age. The idea is, that such a construction is to be put by the courts upon the

language as an ordinary person of common understanding would put upon it when addressed to him for answer. The strict construction or hypercriticism of the language which would make the word ' any ' an indefinite term, so as to include all injuries, even the most trifling, would bring a just reproach upon the courts, the law, the defendant itself and its business. The language of the question must have a fair construction, and, in the words of our statute,   *   *   'that sense is to prevail against either party in which he had reason to suppose the other understood it.' "

In *Insurance Co.* v. *Wilkinson*, 13 Wall. 222, Mr. Justice Miller, in construing the same question and answer in a policy of life insurance, said: "The court said to the jury that, if the effects of the fall were temporary, and had entirely passed away before the application was taken, and if it did not affect Mrs. Wilkinson's health or shorten her life, then the non-disclosure of the fall was no defense to the action. On the other hand, if the effects of the fall were not temporary, and remained when the application was taken, or if the fall affected the general health, or was so serious that it might affect the health or shorten life, then the non-disclosure would defeat recovery, although the failure to mention the fall was not intentional or fraudulent.   *   *   *   *   When the question arises, as in this case, on a trial, the jury, and not the insurer, must decide whether the injury was serious or not. In deciding this, are they to reject the evidence of the ultimate effect of the injury on the party's health, longevity, strength, and other similar considerations? This would be to leave out of view the essential purpose of the inquiry, and the very matters which would throw most light on the nature of the injury, with reference to its influence on the insurable character of the life proposed. Looking, then, to the purpose for which the information is sought by

the question, and to the difficulty of answering whether an injury was serious, in any other manner than by reference to its permanent or temporary influence on the health, strength and longevity of the party, we are of opinion that the court did not err in the criterion by which it directed the jury to decide the interrogatory propounded to them."

The answer to the question propounded to the applicant for insurance in the case before us was clearly made a warranty. Was there a breach of warranty? Upon this question the trial court instructed the jury as follows :

2. When warranty broken.

"That the answers of Solomon Reutlinger in the application were warranties, and that if they believed the statement that he had never called a doctor in his life was untrue, they would find for defendant; but, in determining the meaning of the question to which said answer was made, they will have to find, in order to find a verdict for the defendant, that said Solomon Reutlinger had called a physician, or some one had called a physician for him, for some complaint that was serious in its nature, and affected his constitution or general health.

"The jury are instructed that the question, 'When and by what physician were you last attended, and for what complaint?' as used in the application, had reference to a serious sickness, or disease such as affected seriously his constitution or general health ; and that if they believe from the evidence that the deceased had not been, prior to the application, attended by a physician for such a serious illness, but had been attended for some temporary ailment, the jury should find for the plaintiff.

"If the jury believe from the evidence that, prior to the time of the application for the policy herein sued upon, the assured, now deceased, was not waited upon

by a physician for a sickness or a disease of a serious nature, such as indicated in the first instruction, then his answer to the question, 'When and by what physician were you last attended, and for what complaint?' 'that he never called a doctor in his life,' is not untrue within the legal meaning of the said application; and the plaintiff is entitled to recover, although said deceased may have been called upon by a physician for some temporary ailment or indisposition, not functional or organic in its nature, or affecting his general health."

The court evidently attempted to enforce the rule we have stated, but erred as to the purpose and meaning of the question, and, in so doing, misapplied the rule. In the application of Reutlinger the following clause appears: "All provisions of law forbidding any physician who may have attended me from disclosing any or all information which he acquired by such attendance are hereby expressly waived." In his examination by the medical examiner he was asked the question: "Have you ever had any serious illness or personal injury, or ever undergone any surgical operation?" He answered "No." He was asked if he ever had any one of forty-seven different diseases, and he answered "No." After this he was asked to give the name and residence of his medical attendant, and he answered that he had no physician. He was then asked, "When and by what physician were you last attended, and for what complaint?" To which he answered, "Never called a doctor in his life." In the last mentioned interrogatory two questions were combined in one. (1) He was asked, "When and by what physician were you last attended?" (2) If so, "for what complaint?" The object of asking "for what complaint" was not to ascertain if he ever had any serious illnes or personal injury. He had already answered a question propounded for that purpose in the negative. If such had been the object, it was wholly un-

necessary to ask, in connection with it, "When and by what physician were you last attended?" The question takes for granted that if he had been attended by a physician, it was in a case of sickness; and the words, "for what complaint," were added to ascertain what the sicknes was, without regard to its being serious or trivial, and to show what kind of attendance of a physician was referred to. The obvious purpose of it was to ascertain the name of a person from whom information affecting the risk of insuring the life of Reutlinger could be derived. In furtherance of this purpose, he had agreed in his application that any physician who had attended him might disclose any or all information which he acquired by such attendance. The answer given, if it be correetly written, clearly indicates that Reutlinger so understood the question. It did not aver a condition of health, or that it was not requisite or proper to request the attendance of a physician. It averred that he had never called a physician to attend him in sickness. He warranted this statement to be true, and the evidence adduced at the trial of this case tended to prove that it was untrue —a breach of warranty.

In *Cobb* v. *Covenant Mutual Benefit Association*, 153 Mass. 176, the court held that "an applicant for benefit insurance, agreeing that the contract shall be avoided if the answers made by him in his application are not true, makes their truth the basis of the contract." In the application two questions were propounded to the applicant, as follows : (1) "Have you personally consulted a physician, been prescribed for, or specifically treated, within the last ten years?" (2) "If so, give dates, and for what disease?" To the first he answered "No," and to the the second no answer was made. The court said : "While the question whether the insured had a fixed disease, and what the disease was, might be an inquiry involved in considerable em-

barrassment, the question whether he had consulted a physician, or had been professionally treated by one, was simple, and one about which there could be no misunderstanding. Had it been replied to in the affirmative, the answer would have led to other inquiries. Indeed, the question which follows, which remains unanswered, is : 'If so, give dates, and for what disease.' It is upon the existence of this latter question that the plaintiff founds an argument that it was necessary to show that the insured had some distinct disease permanently affecting his general health before it could be said that he had answered this question untruthfully. But the scope of the question cannot be thus narrowed. Even if the insured had only visited a physician from time to time for temporary disturbances proceeding from accidental causes, the defendant had a right to know this, in order that it might make such further investigation as it deemed necessary. By answering the question in the negative, the applicant induced the defendant to refrain from doing this."

"In *Metropolitan Ins. Co.* v. *McTague*, 20 Vroom, 587, it was held that where the applicant stated that he had not consulted a physician or been prescribed for by one, and such statement was shown to have been false by proof of a prescription received, there could be no recovery, although it appeared to have been given for a cold. The court say : 'That representation did not aver a condition of health, or that it was requsite or proper to consult a physician. It averred that he had not consulted a physician or been prescribed for by a physician. The fact found contradicted the averment, whether the consultation and prescription related to a real disease or an apprehension of disease.' "

*Insurance Co.* v. *Trefz*, 104 U. S. 197, is cited by appellee to sustain the instructions of the trial court, but it does not. In that case the following question was

propounded to the applicant for life insurance: ''Whether now or formerly, when and how long, and to what degree, subject to or at all affected by any of the following diseases and infirmities :'' (Here followed a long list, in alphabetical order, of disorders, beginning with ''apoplexy'' and ending with ''yellow fever,'' and including ''diseases of the brain, diseases of the heart''). The answer was, ''Never sick.'' The court said : ''It is matter of law that the answer 'Never sick,' in the connection in which it was used in the application, must be taken to mean, not that the party was never sick at all of any disorder, but only that he never had had any of the enumerated diseases so as to constitute an attack of sickness. The generality of the language of the answer must be restrained to the particulars to which alone it was meant to be applied, and the surplusage does not fall within the agreement which warrants the answer to be true.'' And it further said : ''It is unquestionable law that in such a case as the present the answer must be true, to justify a recovery, without regard to these considerations ; and for a lack of substantial truth, it is no valid excuse that the party giving the answer did not understand, from ignorance or otherwise, the scope of the question. And so, in the present case, the court below distinctly charged the jury. The language used was: 'But if you believe from the testimony that the insured, whether wilfully or otherwise, made a statement in his application which amounted to an untruth, it will not do to refuse to enforce the contract which the husband and wife entered into, on the ground that it would be a hardship to the widow.' And in another part of the charge the court said: 'If they are in any respect untrue, they avoid the contract, and prevent a recovery upon the policies.' The question, then, for the jury was this : Was the answer of Trefz to the question whether he had ever had any of the enumerated diseases

—'Never sick'—true or untrue?    And undoubtedly it was material, and even necessary, to enquire what was the meaning of that answer.    And to ascertain its meaning—the meaning the law will affix to it—it is perfectly proper to determine the sense in which the words were used by the speaker; the sense in which he intended they should be understood by the person spoken to, and in which they were actually understood by both.    As was well said by Mr. Justice Swayne, in *Insurance Company* v. *Gridley*, (100 U. S. 614), 'The object of all symbols is to convey the meaning of those who use them, and when that can be ascertained it is conclusive."

The trial court instructed the jury as to what they might consider in determining whether the answer of Reutlinger was correctly written down by the medical examiner.    Upon this branch of the case we deem it sufficient to say:    When a medical examiner, authorized by an insurance company to fill up blanks for answers to questions to be propounded to applicants for insurance in a medical examination, or who is apparently authorized to fill them up, does so by writing false answers, and thereafter procures the signature of the applicant thereto, after he had given correct answers to the questions, and the company afterwards receives the premiums and issues a policy, the company will, upon the death of the insured, be estopped from insisting on the falsity of the answers, although warranted to be true.    *Insurance Co.* v. *Brodie*, 52 Ark. 11; *Flynn* v. *Equitable Life Ins. Co.* 78 N. Y. 568; *Grattan* v. *Metropolitan Life Ins. Co.* 80 N. Y. 281; S. C. 92 N. Y. 274; *Connecticut General Life Ins. Co.* v. *McMurdy*, 89 Pa. St. 363; *Pudritzky* v. *Knights of Honor*, 76 Mich. 428; *Equitable Life Ins. Co.* v. *Hazlewood*, *75 Texas*, 348; 1 May on Insurance, (3d Ed.) sec. 303; Cook on Life Insurance, sec. 21, and cases cited.    "This rule is, however, subject to the obvious limitation that if the applicant,

3. As to estoppel.

knowing the presence of the untrue answer by having read it or otherwise, afterward certifies to its truth, the insurer may set up the untruth." *Grattan* v. *Metropolitan Life Ins. Co.* 92 N. Y. 274, 283.    If, after the delivery of the policy, he discovers that a fraud has been perpetrated on him and the company, by means of the false answers, it would be his duty to make the fact known to the company.    "He could not hold the policy without approving the action of the agent and thus becoming a participant in the fraud committed.    * * * The consequences of that approval cannot after his death be avoided." *New York Life Ins. Co.* v. *Fletcher*, 117 U. S. 519.

Reverse and remanded for a new trial.

Mansfield, J., did not sit in this case.