BROTHERHOOD OF AMERICAN YEOMEN *v.* FORDHAM.

Opinion delivered November 8, 1915.

1. BENEFIT INSURANCE—WARRANTIES BY INSURED.—A benefit certificate expressly provided that the insured warranted the answers made by him in his medical examination to be true, and that the answers to the questions asked him by the medical examiner should be held as warranties. *Held*, a breach of a warranty would operate as an express breach of the contract.

2. INSURANCE—STATEMENT BY INSURED—KNOWLEDGE OF MEDICAL EXAMINER.—A. applied for benefit insurance in a certain fraternal order, and was examined by a certain medical examiner. Thereafter he applied for insurance in another order, and was examined by the same medical examiner. *Held*, recovery was barred against the last order because of the false statements made to the medical examiner by A. and this was not affected by the fact of A.'s having already appeared before the same medical examiner in another matter, it appearing that A. had made false statements as to his health on that occasion also.

3. BENEFIT INSURANCE—FALSE WARRANTIES—DIRECTED VERDICT.—A benefit certificate provided that the answers made to the medical examiner should be warranties, and that any false or untrue statement or answer should operate to forfeit the rights of the beneficiary. *Held*, when the undisputed evidence showed that the insured had made a false statement to the medical examiner upon a material matter, and in an action by the insured to enforce the certificate, it is the duty of the court to direct a verdict for the defendant.

Appeal from Hot Spring Circuit Court; *W. H. Evans,* Judge; reversed.

Mrs. H. C. Fordham instituted this action against the Brotherhood of American Yeomen, a fraternal benefit society, to recover upon a benefit certificate issued by it to Arthur L. Fordham and payable to the plaintiff. The facts are as follows:

On the 4th day of March, 1911, Arthur L. Fordham, who then resided at Plainview, Arkansas, made application to the local representative of the Brotherhood of American Yeomen, of Des Moines, Iowa, for a benefit certificate in said association, and was examined by the local medical examiner of the association. A benefit certificate in the sum of $2,000 was issued and delivered to him on the 13th day of March, 1911. The insurer was a fraternal society and the benefit certificate issued by it, which was the contract of insurance, expressly provided that the application of the member, including his answers in the medical examination, should become a part of the insurance contract. A copy of the medical examination, including the questions asked by the medical examiner and the answers made by the insured appears upon the back of the benefit certificate, and is expressly made a part of the insurance contract and the answers are warranted to be true.

The insured was asked if he had consulted a physician during the past ten years, and answered that he had not. He was asked if he had ever had any disease of the heart, and answered that he had not. He was also asked if he had ever had any disease of the stomach and bowels, and answered that he had not.

It was proved at the trial that the insured had had a severe attack of typhoid fever in the latter part of the year 1905 while he resided at Malvern, Arkansas, and that two physicians and two nurses were in attendance upon him daily for a period of about six weeks, that he apparently made a good recovery. That typhoid fever is a disease of the stomach and bowels. That heart disease

is one of the consequences that often follow an attack of typhoid fever, and that the insured became ill in the summer of 1911, and that it developed he had a dilated heart with valvular lesions and leaking valves. From that time for a period of about a year, he was confined to his bed most of the time and became permanently disabled. There was a clause in his benefit certificate which provided that in case of permanent disability he should be entitled to recover one-half of the amount of his policy. He brought suit against the insurance association in the latter part of 1912 to recover under this clause of the policy, and judgment was taken by default against the association. Service in the case was had upon local officers of the association, and the managing officers did not learn of the pendency of the suit until after judgment had been rendered against the association. An attempt was made to have the court set aside the judgment, but this was unsuccessful, and, upon the advice of counsel, the association paid the judgment.

The association then for the first time discovered that the insured had had typhoid fever. The rules of the order provide that benefit certificates may be revoked and members expelled for fraud in procuring membership in the association. The insured was cited to appear for a hearing, and, upon his trial, was expelled and his insurance cancelled. The by-laws provide for a hearing on the part of the insured either in person or by counsel. They also provide that the hearing may be either upon oral evidence or upon affidavits forwarded by the insured to the board of directors of the association.

Evidence was adduced by the insured tending to show that on May 10, 1910, he made application to the Modern Woodmen for a policy of insurance, and was examined by the same physician who examined him for the policy now in controversy. In that examination he was asked about the diseases he had had, and answered that he had typhoid fever two months in 1900 and had a complete recovery. He was also asked if he had been treated by or had consulted any physician in regard to personal

ailments within the last seven years and answered that he had not.

Mrs. Fordham testified that when the application for the policy now in controversy was made, her husband told the medical examiner that he was busy, and for him to put down the same answers that had been made in the application to the Modern Woodmen.

It was also shown in evidence on the part of the plaintiff that when the officers of the association visited Fordham after heart disease had developed in 1912, and told him that he had made false answers in his application for insurance, he replied that the medical examiner knew all about the previous application he had made, and about his having had typhoid fever.

Other evidence will be referred to in the opinion. Judgment was rendered in favor of the plaintiff for $776.50 and the defendant has appealed.

*John D. Denison, Jr.,* of Des Moines, Iowa, and *E. H. Vance, Jr.,* for appellant.

*J. C. Ross,* for appellee.

Hart, J., (after stating the facts). (1) Parties competent to contract may enter into such agreements as they see fit, and it is the purpose of the law to carry out these agreements. In the case before us the answers to the questions asked by the local medical examiner were copied upon the benefit certificate, and were made a part of it. It was expressly provided in the benefit certificate that the insured warranted the answers made in his medical examination to be true, and that the answers to the questions asked him by the medical examiner should be held to be warranties. Breach of a warranty operates as an express breach of the contract. *Metropolitan Life Ins. Co.* v. *Johnson,* 105 Ark. 101; *National Annuity Association* v. *McCall,* 103 Ark. 201.

(2) It is urged by counsel for the plaintiff that the defendant association is estopped to claim a breach of warranty on account of false answers made by the applicant to the medical examiner for the reason that the

medical examiner had knowledge of the matters about which the questions were asked, and that his knowledge constituted knowledge on the part of the association. Conceding that the knowledge of the medical examiner should be imputed to the association, this does not help plaintiff's cause. The testimony on the part of the plaintiff only shows that the medical examiner had knowledge of what appeared in the application made to the Modern Woodmen. It will be remembered that the application to that company was made on May 10, 1910, and the application for the policy now under consideration was made on the 4th day of March, 1911. In his answers to an application for a policy in the Modern Woodmen, Fordham stated that he had not consulted or been examined by a physician for seven years, and that he had typhoid fever in 1900, and had completely recovered. In the application under consideration in this case, he stated that he had never had heart trouble or any disease of the stomach or bowels, and that he had not consulted a physician within the last ten years.

So it will be seen that if the knowledge of the physi- cian be imputed to the association its information then would be that the insured had typhoid fever in 1900, a period of time more than ten years prior to the time he made application for insurance with the defendant association.

If the association had known that the insured had had a severe attack of typhoid fever in the latter part of 1905 instead of 1900 it probably would have made a more searching inquiry as to his condition at the time he made the application for the insurance. At least it could have done so. Its local medical examiner reported that he was sound when he made application for insurance, and that there were then no symptoms of heart affection. Treating the company as having knowledge of the applicant having had typhoid in 1900, it might have thought that if no ill effects had resulted from it for more than ten years, none was likely to result. From the questions asked it seems to be the policy of the association to

inquire about all disease the applicant may have had during the ten years preceding the time of the application. For example, one question asked by the defendant association was whether or not the insured had consulted or been examined by a physician within the last ten years. To that question he answered "No." His answer was false; and, according to the terms of the policy, was warranted to be true.

(3) The answers in question were made in regard to matters which were material to the risk and did not relate to matters of opinion or judgment about which there might have been an honest mistake on the part of the applicant.

In the beneficiary certificate before us it was agreed that the answers made to the medical examiner should be warranties and that any false or untrue statement or answer should operate to forfeit the rights of the beneficiary.

The evidence is undisputed that the insured had a severe attack of typhoid fever in the latter part of 1905 and that disease of the heart and other diseases often result therefrom. The court, therefore, should have directed a verdict in favor of the insurance association.

Other assignments of error are pressed upon us for a reversal of the judgment, but, inasmuch as it must be reversed for the reason already given, we need not consider them.

The record shows that the case has been fully developed. No useful purpose could, therefore, be served by remanding the cause for a new trial, and it will be dismissed here.