---

### THE NATIONAL AMERICANS *v.* RITCH.

### Opinion delivered November 22, 1915.

1. INSURANCE—WARRANTIES BY INSURED.—When a benefit certificate expressly provides that the answers made by the applicant to the medical examiner shall be treated as warranties, a material representation, falsely made, will avoid the policy.

2. INSURANCE—APPLICATION—CONSTRUCTION OF QUESTIONS.—The language of a question in an application for insurance is to be read in its plain, ordinary and natural signification.

3. INSURANCE—MEDICAL EXAMINATION—STATEMENTS BY APPLICANT.—In an application for a benefit policy, the applicant was asked: "Have you within the past five years, consulted or been under the care of a physician? * * *" The applicant answered "No." In an action to collect on the policy it appeared that the applicant had been examined by a physician, in pursuance of her application for a Confederate pension, and the physician found her to be in a run-down condition. *Held,* her examination did not constitute a consultation with a physician or a condition of being "under the care of" a physician within the meaning of the question asked.

4. EVIDENCE—REFRESHING RECOLLECTION.—In an action on a benefit certificate of insurance, it was set up by way of defense that insured had made false answers to questions asked her relative to her having been under the care of a physician at a certain time. *Held,* where the physician who had examined her, in pursuance of her application for a Confederate pension, was called as a witness, it was competent for him to refresh his memory by reading the certificate he had made at the time he had examined her.

5. INSURANCE — MEDICAL EXAMINATION — "AILMENT" DEFINED.—The word "ailment" as used in the questions propounded to an applicant for a benefit certificate means something which substantially

impairs the health of the applicant, materially weakens the vigor of his constitution, or seriously deranges his vital functions.

6. INSURANCE—PHYSICAL CONDITION OF APPLICANT—"CHRONIC RHEUMATISM."—When the applicant for the benefit certificate had "chronic rheumatism," which a physician testified was not necessarily permanent, and that she might recover, it will not be held as a matter of law, that the applicant had any serious ailment at the time she made her application for the insurance.

Appeal from St. Francis Circuit Court; *J. M. Jackson,* Judge, affirmed.

### STATEMENT BY THE COURT.

The National Americans is a fraternal benefit association organized under the laws of the State of Missouri, and on the 13th day of March, 1912, issued a benefit certificate to Mrs. Martha E. Johnson, of Colt, Arkansas, in which Charles Ritch, her son, was named as beneficiary. In November, 1912, Mrs. Ritch died and the insurance association denying liability on the certificate because of alleged false warranties, Charles Ritch commenced this suit to recover on the benefit certificate. He died and the action was revived in the name of his brother, Walter Ritch.

The insured agreed that the questions and answers in her application, including those made to the medical examiner, should be a part of the contract of insurance and that all such questions and answers were made warranties and a part of the policy. The policy in express terms provided that if any answer to any question were not true the policy should be void. The insured returned answers to questions relating to consultations with physicians, medical attendance and illness as follows:

"Q. Are you in sound health, mentally and physically, and free from any recurring ailment?

A. Yes.

Q. Have you within the past year felt that you had any mental or physical ailment?

A. No.

Q. Have you within the past five years consulted or been under the care of any physician, or physicians? If so, give name of each, and particulars as to ailment?

A. Dr. J. C. Reynolds; malarial fever in September, 1911.

Q. What has been the general character or state of your nervous, mental and physical health during the past three years?

A. Good.

Q. Have you had any disease or ailment not mentioned above. Answer fully.

A. No.

Q. Is there anything to your knowledge or belief in your physical or mental condition, family or personal history, or habits, tending to shorten your life, which is not distinctly set forth above?

A. No."

The insured was granted a pension as widow of a Confederate soldier and on the 7th day of July, 1907, Dr. J. O. Rush made an examination of her physical condition and under oath stated that she was suffering from chronic rheumatism and was in a general run down condition. This certificate was offered in evidence in the present action but the court refused to admit it. Doctor Rush, the physician who made the certificate was then introduced as a witness and was permitted to refresh his memory by reading the certificate. He had first stated that he made an examination of Mrs. Johnson for the purpose of being used in her application for a pension, but did not remember anything about it except that she was not in robust health. After refreshing his memory by an examination of the pension certificate just referred to he stated that he examined her about the time stated in the certificate and that she had chronic rheumatism. He stated that he found no heart trouble accompanying her ailment and that he could not say that her ailment would lessen her longevity; and that he could not undertake to say that her condition continued or that her health would be materially affected thereafter.

The jury returned a verdict for the plaintiff and the defendant insurance association has appealed.

*D. C. Finley,* for appellant.

The trial court should have directed a verdict for the defendant.

The court erred in excluding from the jury the certified copy of the application for a pension. 78 Ark. 1; 8 Ann. Cases 208, and cases cited.

The benefit certificate was a Missouri contract. 84 Ark. 511.

The warranties must be strictly true regardless of materiality. 147 Mo. 561; 98 Mo. 521; 97 Mo. App. 636.

Failure to disclose the name of Dr. Rush, and the ailment, discovered by him, are material. 58 Ark. 528; 71 Ark. 295; 72 Ark. 620; 84 Ark. 57.

*Mann, Bussey & Mann,* for appellee.

The court did not err in refusing to allow the certificate of the physician to be introduced, it was collateral to the issue only.

The testimony of Dr. Rush was not competent for any purpose. Kirby's Dig., § 3098; 111 Ark. 554.

The warranties were strictly true. 58 Ark. 528; 65 Ark. 581; 71 Ark. 295; 111 Ark. 554.

The case can not be tried in the lower court upon one theory and in this court upon another. 71 Ark. 242; 74 S. W. 300; 74 Ark. 72; 84 S. W. 1025; 77 Ark. 27; 90 S. W. 283; 94 Ark. 390; 127 S. W. 456.

HART, J., (after stating the facts). (1) The benefit certificate expressly provided that the questions and answers made by the applicant to the medical examiner should constitute a part of the contract of insurance and that such questions and answers were made warranties; and it was provided that if any of the answers or statements were not true the policy should be void. This constituted a valid agreement and a material false representation by the insured would render the policy void. *Brotherhood of American Yeomen* v. *Fordham,* 120 Ark. 605.

(2-3) It is first contended that the insured made a false representation which constituted a breach of warranty in relation to her consultations with physicians. This contention is based upon the following question:

"Have you, within the past five years, consulted or been under the care of any physician or physicians; if so, give name of each and particulars as to ailments?" The insured answered, "Dr. J. C. Reynolds, malarial fever, in September, 1911." The medical examination was made on May 8, 1912. The testimony of Doctor Rush shows that the examination made by him was in July, 1907, when she made application for a pension as the widow of a Confederate soldier and that she was at that time suffering from chronic rheumatism.

Her examination by Doctor Rush did not constitute a consultation with a physician or a condition of being "under the care of" a physician within the meaning of the question just referred to. The language of a question in an application for insurance is to be read in its plain, ordinary and natural signification. At the time the insured applied for her pension she was not treated by Doctor Rush and did not apply to him for treatment as a physician. She was not in any sense under his care as a physician and did not consult him with a view of having him treat her for any ailment that she might have.

(4) It may be stated here that it was competent for Doctor Rush to refresh his memory by reading the certificate he made when he examined the insured at the time she filed her application for a pension: *St. Louis S. W. Ry. Co.* v. *White Sewing Machine Co.*, 78 Ark. 1, 8 Am. & Eng. Ann. Cas. 208, and case note.

(5) It is next urged that the insured made false representations which constituted a breach of warranty in regard to her answers as to whether she had any ailment, mental or physical, at the time she made the application, or concerning the general character of her mental and physical health during the past three years. The word "ailment" as used in these questions means something which substantially impairs the health of the applicant, materially weakens the vigor of his constitution, or seriously deranges his vital functions. *Des Moines Life Ins. Co.* v. *Clay*, 89 Ark. 230; *Franklin Life Ins. Co.* v.

*Gallighan,* 71 Ark. 295; *Providence Life Assur. Society*
v. *Reutlinger,* 58 Ark. 528.

(6) According to the testimony of Doctor Rush the
insured had chronic rheumatism at the time he examined
her when she applied for a pension, but he said that she
did not have any heart trouble at that time and that he
could not say that her condition in respect to the rheuma-
tism was permanent—that she might grow better. Un-
der these circumstances it can not be said as a matter of
law that she had any serious ailment at the time she made
her application for insurance and answered the questions
propounded to her by the medical examiner. The court
submitted to the jury the truth or falsity of her answers
in this respect under proper instructions and the jury, by
its verdict, found against the contention of the defend-
ant insurance association, and, there being evidence of a
substantial character to support the finding of the jury,
its verdict must be upheld by us.

We find no prejudicial error in the record and the
judgment will be affirmed.