THE MACCABEES *v.* GANN.

Opinion delivered January 19, 1931.

*Calhoun, Matthews & Nelson* and *Ogan & Shaver,* for appellant.

*Giles Dearing,* for appellee.

MEHAFFY, J. This suit was begun by appellee to recover on two benefit certificates of $1,000 each issued on December 1, 1928, and April 1, 1929, upon the life of Opal Gann, and payable to appellee as husband of said Opal Gann. Opal Gann died on the 24th day of May, 1929, and prior to her death she had paid the assessments due upon said certificates which amounted to the sum of $13.80. The appellant filed answer in which it admitted the allegations of the complaint, but alleged that certain answers in the application of Opal Gann were warranties and were untrue.

One of the questions was No. 52 and was as follows: "Q. Name all diseases or injuries for which you have consulted a physician for five years. A. None."

The appellant alleged that the said Opal Gann signed and certified to said application in the following words: No. 66. "I hereby certify that I have carefully reviewed the answers to the above questions and warrant and

agree that they are written as stated by me and are true in every particular"; that in the application for membership and for the second certificate the said Opal Gann, in answer to question No. 76 in said second application, stated as follows:

"Q. No. 76: I hereby certify that I have carefully reviewed the answers to the foregoing questions, 39 to 74, inclusive, and I warrant and agree that they are written as stated by me and are true in every particular, and that they supplement answers made upon my original and former examination or examinations in the Maccabees."

Appellant further alleged that said applicant, Opal Gann, agreed to conform to the bylaws, rules, and usages of appellant's society then in force or thereafter enacted, and the articles of association and laws of the Maccabees in force at her death together with her application and medical examination and certificate of membership shall form the basis and constitute her contract for beneficiary membership in the Maccabees; that any untrue statement or answer, or any concealment of facts in said application, would forfeit the rights of herself and beneficiary to benefits and privileges from appellant, that the said Opal Gann, in the application, when asked the question No. 52: "Q. Name all diseases or injuries for which you have consulted a physician within five years. A. None."

Appellant states that these answers or statements were false and untrue, and that the appellant relied upon the truthfulness of them, that they were warranties, and that the benefit certificate sued on never did go in force and effect but was void.

Appellee filed a reply to this answer denying the allegations as to the warranties.

Appellant defended on the ground that the policies were void. It contends that the answers to the questions above set forth were warranties and were false. It calls attention to and relies on the case of *Providence Life*

*Assurance Society* v. *Reutlinger,* 58 Ark. 528, 25 S. W. 835.

Appellant quotes from that case as follows: "As a general rule, a warranty is a stipulation expressly set out, or by inference incorporated, in the policy, whereby the assured agrees "that certain facts relating to the risk are or shall be true, or certain acts relating to the same subject have been or shall be done."

The court in that case, however, also said in speaking of warranties and representations: "When made to the insurer at or before the contract is entered into, they form a basis upon which the risks proposed to be assumed can be estimated. They operate as the inducement to the contract. Unlike a false warranty, they will not invalidate the contract, because they are untrue, unless they are material to the risks, and need only be substantially true. They render the policy void on the ground of fraud, "while a noncompliance with a warranty operates as an express breach of the contract. * * * All reasonable doubts as to whether they be warranties or not should be resolved in favor of the assured."

Appellant next calls attention to *Metropolitan Life Ins. Co.* v. *Johnson,* 105 Ark. 101, 150 S. W. 393. In this case the court said: "The questions propounded in the application, as set out in the statement of facts, calls for answers founded on the knowledge or belief of the applicant, and in such cases a misrepresentation or omission to answer will not avoid the policy unless wilfully or knowingly made with an attempt to deceive."

The answers in that case were somewhat like those in this case and the declaration of the applicant at the close was very similar to the answers and declaration in the instant case. It was stated in the application: "Every answer must be true or the policy will be void."

Next case relied on by appellant is *Brotherhood of American Yeomen* v. *Fordham,* 120 Ark. 605, 180 S. W. 206. In that case the court said:

"In the beneficiary certificate before us it was agreed that the answers made to the medical examiner should be warranties, and that any false or untrue statement or answer should operate to forfeit the rights of the beneficiary. The evidence is undisputed that the insured had a severe attack of typhoid fever in the latter part of 1905 and that disease of the heart and other diseases often result therefrom. The court therefore should have directed a verdict in favor of the insurance association."

The appellant next quotes from and relies on *Bankers' Reserve Life Co.* v. *Crowley*, 171 Ark. 135, 284 S. W. 4. It quotes as follows:

"A noncompliance with a warranty operates as an express breach of the contract of insurance, while false representations render the policy void on the ground of fraud." Immediately following this statement in the opinion is the following: "The questions propounded in the application as set out above call for answers founded on the knowledge or belief of the applicant, and a misrepresentation or omission will not avoid the policy unless wilfully or knowingly made with an intent to deceive. * * *

"In *Mutual Aid Union* v. *Blacknall*, 129 Ark. 450, 196 S. W. 792, it was held that knowledge affecting the rights of the insured, which comes to the agent of the insurance company while he is performing the duties of his agency in receiving applications for insurance and delivering policies, becomes the knowledge of the company; and the insurance company is bound thereby, where the agent who solicited the business was charged with the duty of asking the applicant questions concerning his physical condition."

In the instant case the questions as to whether the insured had consulted a physician or physicians was not asked; the question was: "Name all diseases or injuries for which you have consulted a physician within five years" and the answer written by the agent of the company was "None."

The undisputed proof shows that this was not the answer, but that both Gann and Mrs. Gann told the agent about being injured from lifting a piano. The agent of the company himself says, when asked what answer Gann gave him: "As well as I remember he advised me that she had not had any disease or accident, but he mentioned the fact that at one time, the date of which I do not recall, as he stated to me, she assisted in moving a piano. And after assisting in that work she had a hemorrhage, but he said it did not amount to anything, as he recalls, and so he wrote in reply to the question "None."

He was then asked: "Did he tell you whether or not there was a doctor to treat her or consult her for that injury or illness?" He answered: "I think maybe he did."

Then, he testified, they went to see Mrs. Gann, and he said she made about the same answers that Gann did and told him of this incident, and the witness said: "Well, Dr. Lipsey will have to review this, and he can fill in as he thinks best" and he just let the word remain there subject to Dr. Lipsey's changing.

Whether the answers were representations or warranties is immaterial in this case because the evidence shows that the agent of the insurance company was advised that she had consulted a doctor about injury and hemorrhage. It is true that one doctor for the insurance company testified that she had tuberculosis and consulted him. This evidence, however, is contradicted by other witnesses and by the circumstances.

Then the physician representing the company examined Mrs. Gann privately, and had an opportunity to ascertain her condition, and he says there was no one present when he made the examination, and he said that Mrs. Gann told him that she had not been treated for anything that amounted to anything, nothing worth mentioning, and he does not remember whether she told him she had consulted a physician or not. But when the in-

sured stated to the doctor that she did not think her ailments amounted to anything, that statement in itself was sufficient to put him on notice that she had ailments, but that in her opinion they did not amount to anything. If the company wanted to know, or he wanted to know, what the ailments were, he should have inquired. This doctor also said at the time that he examined her: "She was apparently the perfection of health."

Notwithstanding the assured was in excellent health at the time of the application, and notwithstanding the fact that the company's physician examined her and was advised that she had some ailments but that she did not think they amounted to anything, still the company seeks to avoid the policy by undertaking to enforce strictly the rule, harsh and unfair as it is, that, if the answers were not literally true, recovery cannot be had, regardless of the good faith of the applicant.

A warranty is in the nature of a condition precedent; it must appear on the face of the policy; it cannot be created or extended by construction.

"The practical operation of such literal warranties is so often harsh and unfair that courts require their existence to be evidenced clearly and unequivocally, and are not inclined to allow it to rest upon a mere verbal interpretation where a reasonable construction of a contract as a whole will authorize a different meaning. All reasonable doubts as to whether statements inserted in or referred to in an insurance policy are warranties or representations should be resolved in favor of the insured." *Modern Woodmen of America* v. *Whitaker,* 173 Ark. 921, 293 S. W. 1045.

The difference between warranties and representations is discussed at length in the case of *Modern Woodmen of America* v. *Whitaker, supra,* and it is unnecessary to discuss it further here. The principles announced in that case are applicable here.

For the reasons given above, instruction No. 2, objected to by appellant, was not erroneous. The appellee

would have been entitled to recover in this case, however, if the answers to the questions had been warranties.

Appellant also insists that the court erred in its failure to give the following instruction requested by it: "You are told, gentlemen, as a matter of law, the policy, the application for insurance, the medical examination, the bylaws of the association, altogether create the contract sued on in this case.

A sufficient reason for refusing to give this instruction is that the bylaws make the articles of incorporation a part of the contract, and these were omitted from the requested instruction.

In addition to this, it was made perfectly clear to the jury what the contract was. Instruction No. 3 requested by defendant was properly refused. Certainly there is no evidence that the beneficiary had knowledge that the policies were procured through false warranties. All the proof shows that there was no intentional false statement, and that both the agent and the physician who made the examination were in possession of facts from which they could have learned, if they had made inquiry, everything that they now claim that they did not know.

We find no reversible error in the case, and the judgment of the circuit court is affirmed.