KANSAS CITY SOUTHERN RAILWAY COMPANY v. COBB.

Opinion delivered May 24, 1915.

1. EVIDENCE—NON-EXPERT TESTIMONY—PHYSICAL CONDITION OF PLAINTIFF—PERSONAL INJURY ACTION.—Where one person is acquainted with another, and they come in contact with each other frequently, it is not a matter of expert knowledge for the one to tell whether the other appears to be sick or well, and such testimony is competent.

2. EVIDENCE—PHYSICIAN—APPARENT CONDITION OF PATIENT.—A physician may testify as to the apparent condition of his patient, whom he treats.

3. NEGLIGENCE—PERSONAL INJURIES—PROXIMATE CAUSE.—Plaintiff was carried past her station by defendant railroad company, and got off at the next station, where she alleged she was drenched by rain, and suffered damages by reason of the failure of the railway company to build a fire in the waiting room. Held, under proof of the facts alleged it was a question for the jury to say whether the facts alleged and testified to were the proximate cause of the damages sustained.

4. RAILROADS—CARRYING PASSENGER PAST STATION—DAMAGES.—Where a passenger is wrongfully carried past his station, the amount of his recovery should be such sum as the jury finds from the evidence will fairly compensate him for the exposure, inconvenience and physical pain and suffering occasioned by the negligent act.

5. RAILROADS—WAITING ROOM—FIRE.—It is the duty of a railroad to exercise ordinary care to keep its waiting rooms comfortably warm, and if it fails to exercise such care, and a passenger suffers injury as a direct result of such failure, the railroad company will be liable in damages.

Appeal from Polk Circuit Court; *Jefferson T. Cowling*, Judge; affirmed.

STATEMENT BY THE COURT.

This is a suit by the appellee against the appellant to recover damages for alleged negligence in carrying appellee beyond her destination and in refusing to keep a fire in its waiting room at such a season of the year when it was sufficiently cold to make a fire necessary for appellee's comfort. The appellant denied the grounds for recovery alleged in the complaint, and denied the allegations of damage, and set up negligence on the part of appellee.

Appellee testified that she purchased tickets for herself and children from Texarkana to Hatton, a flag station on appellant's road, and they became passengers on the 5th of May, 1914; that when the train reached Hatton it was about two hours late, and that she notified the conductor and brakeman in charge of the train that she wished to debark at Hatton; that she had received a telegram that her father was in a dying condition; that Hatton was her nearest station to him and she was anxious to reach him at the earliest possible moment; that the train failed to stop at Hatton and appellee was carried on to Vandervoort, a station north of Hatton about two miles, where she debarked; that it was not raining as the train passed through Hatton, at least not enough to wet anyone; that it was raining torrents as she got off at Vandervoort, and as a consequence she was drenched. She was clad in thin summer clothes. There was no fire in the waiting room. She told the man there having charge of the depot that she was cold and wanted a fire. She was not cold when she first went in but in ten or fifteen minutes she was shaking with a hard ague. The agent did not make a fire. She remained there nearly an hour, and left on the south-bound train to return to Hatton, after buying a ticket and paying six cents therefor. It was daylight when she reached Hatton. There was a cold wind blowing that morning. Her health had been good before that for nearly a year, but she had not been in good health since; had suffered with headaches, backaches, nervousness, loss of sleep and loss of appetite,

and that she became dangerously ill at her father's; had a jerking in the back of her neck, and her menstruation was irregular, which had not been the case before. Her menstruation period was on during that trip.

One witness testified that he saw appellee at her father's soon after she arrived and she "looked bad, like she was sick." He saw her several times at her father's and she seemed to be in bad health; seemed to be in good health before that.

Dr. W. A. Sanders testified that he lived at Vandervoort and treated Mrs. Cobb on the occasion mentioned, during her visit to her father's. She was complaining of her side the first day she came. She was up while witness was talking to her. He made no examination of her. He prescribed liniment externally. "She seemed to be in fairly good health; did not seem to be anything wrong. Had only just taken cold." Witness did not go there to treat her. She came into the room where witness was. Appellee said she had a pain in her left side and wanted something to apply externally and witness prescribed what she wanted.

Dr. E. A. Badgett testified that he was appellee's family physician and had known her for some years, and had prescribed for her frequently. He prescribed for her on May 8 and had written two or three prescriptions since that time. He made no physical examination of her. Her health seemed to be going down in the last six months. Witness took her word as to her complaints. He treated Mrs. Cobb for one of her lungs—pleurisy; treated her two or three times; did not recall when he treated her for lung trouble, but it was two or two and a half years ago. Appellee had the appearance at the time of the trial of a tubercular patient.

Other witnesses testified that they knew appellee, and that she looked to be in good health the first of the year; did not appear at the time of the trial to be in the same condition of health as she was when the witnesses had seen her before.

The night operator in charge of the station at Vandervoort stated that it was warm on the night the appellee debarked at Vandervoort, and that she made no request of witness to build a fire. It was not cold enough for a fire. Witness's wife had been in the station room that night without any wraps, and witness was working in his shirt sleeves and did not get cold.

The train auditor testified that appellee stated before the arrival of the train at Hatton that she had decided to go on to Vandervoort where it was customary for her to get off. Witness stated that appellee did not give him any notice that she wished to get off at Hatton and made no complaint to witness as the train was going out of Hatton. Hatton was not a regular stop. There was only a sort of a shed there for a station, and it was pouring down rain as the train passed through Hatton.

The conductor and brakeman also testified to the same effect. The conductor also testified that after appellee had gone in the waiting room at Vandervoort he told her that he had spoken to the auditor to pass her back and that she replied, "That is all right."

The physicians on behalf of appellant testified in substance that tuberculosis would cause many other troubles, among them irregular menstruation.

Among other instructions, the court told the jury, at the instance of the appellant, that appellant was not liable to appellee for any injury resulting to her due to her getting wet in going from the coach to the waiting room, even though she was carried beyond her station against her consent.

And on its own motion the court instructed the jury that it was the duty of the appellant to exercise ordinary care to keep its depot and waiting room in a reasonably comfortable condition for its passengers, and that if appellant failed to exercise ordinary care in keeping its waiting room at Vandervoort comfortably warm it was liable to the appellee in such sum as would reasonably compensate her "for any and all injuries she may have

sustained as a direct and proximate result of such failure to exercise such care.''

The jury returned a verdict in the sum of $1,000.

From a judgment in favor of the appellee in the sum of $1,000 this appeal has been duly prosecuted. Such other facts as may be necessary will be stated in the opinion.

*James B. McDonough,* for appellant.

1. It was error to admit nonexpert witnesses to testify as to plaintiff's appearance and health.

2. Doctor Sanders' testimony as to plaintiff's apparent condition was inadmissible. Her cold was due to getting wet in going from the train to the station, for which the company can not be held liable.

3. A verdict should have been directed for defendant. It was not responsible for the rain or the wetting. A carrier is liable only for the probable and natural consequences, resulting from carrying a passenger beyond her destination. 67 Ark. 123; 101 *Id.* 90; 82 *Id.* 598; 94 *Id.* 324. Fires are not usual in May; besides, the testimony shows she did not request a fire. But if requested and necessary, it was made so by a sudden and unforeseen exigency. 70 Ark. 136; 79 *Id.* 59.

4. There is no proof that the cold was due to the failure to build a fire. 83 Ark. 584. Nor that the disease was due to exposure. Where an injury is due to one of two causes, for one of which the carrier is liable, and for the other it is not, there can be no recovery when the proof fails to show that the injury was due to that cause making the carrier liable. 105 Ark. 161; 102 *Id.* 581; 46 *Id.* 585; 83 *Id.* 584; 179 U. S. 658; 159 S. W. 214.

5. There must be some evidence tending to show that the injury was due to defendant's negligence. 101 Ark. 117. There was no evidence of delay, inconvenience or expense. 67 Ark. 123.

*J. I. Alley,* for appellee; *H. H. Thomas,* of counsel.

1.  The damage claimed by reason of the failure to stop the train at Hatton is applicable under sections 6634, 6704-5, Kirby's Digest.

2.  It is the duty of railroads to keep their waiting rooms comfortably heated at all proper times and seasons. Kirby's Dig., § 6634. If damage results from such failure the company is liable.   70 Ark. 136; 92 *Id.* 74; White, Pers. Inj. on Railroads, vol. 2, § 622, p. 948.

WOOD, J., (after stating the facts).  (1)  Appellant contends that the court erred in permitting nonexpert witnesses to testify in effect that soon after the injury appellee "appeared to be suffering."  That "she looked bad; looked like she was sick; seemed to be in bad health." That "a short time before the injury she appeared to be in very good health."

The testimony comes within the rule approved by this court in *St. Louis, Iron Mountain & S. Ry. Co.* v. *Osborne,* 95 Ark. 310-317, where we held that it was not error to allow nonexpert witnesses to state facts within their knowledge and observation as to the plaintiff's physical condition, habits, etc., before and after the date of the alleged injury.

Judge Elliott, in his treatise on Evidence, volume 1, section 679, states: "An ordinary witness may testify in a proper case as to the state of his health. Thus, he may testify that he has suffered pain, or state his physical condition generally. * * * So, such a witness may testify that another person seemed to be sick, suffering pain, nervous, or in good or bad health."  See also sections 675, *et seq.* 676.

Where one person is acquainted with another and they come in contact with each other frequently, it is not a matter of expert knowledge for one to tell whether the other appears to be sick or well.  These are matters of common experience and observation.  And a nonexpert witness, after stating the facts upon which his opinion is based, may even give his opinion in such matters.  Jones on Evidence, vol. 2, §§ 360, *et seq.* 366.

The appellee herself had testified as to her condition of health before the alleged occurrence of which she complains, and the testimony of these witnesses but tended to corroborate her, and their testimony was competent.

(2) Appellant complains that the court erred in admitting the evidence of Dr. W. A. Sanders. This witness was at appellee's father's house on the day she arrived there and had prescribed for appellee. The only portion of his testimony to which appellant objects was as follows: "Q. What was her apparent condition? A. Why, she seemed to be in fairly good health, all right; didn't seem to be anything wrong; had only just taken cold. Of course, I could not say; I did not make an examination." This testimony was competent and certainly was not in any manner prejudicial to appellant. If it could have had any effect at all on the jury, it was rather in appellant's favor than otherwise. There can be no question about a physician, an expert in the treatment of diseases, being permitted to testify as to the apparent condition of the patient whom he treats. As we have seen, the law permits even a nonexpert to testify as to whether such person appears to be sick or well, such matters not being peculiarly of expert knowledge.

(3) Appellant contends that there was no evidence to sustain the verdict inasmuch as neither the appellee nor any of her witnesses testified to the effect that the failure on the part of the agents of the appellant to build a fire in the depot resulted in the cold and other ailments of which appellant complains and about which she testified.

The appellee testified, in effect, that while she was at Texarkana her menses appeared; that when the train reached Hatton, her destination, it was not raining, but that by the time the train reached Vandervoort, the place where she debarked, "it was raining torrents," and, as a consequence, she "was drenched." The waiting room at Vandervoort was not heated, and in ten or fifteen minutes after she entered it she was shaking with a hard ague. Before this she had explained to the agent that she was cold and wanted a fire. He did not make the fire. She

remained in this waiting room nearly an hour and took the south-bound train to Hatton and arrived there about daylight; the morning was very cold, and a cold wind blowing from the east. Her health before had been good for nearly a year. After she arrived at her father's she became dangerously ill, and has since been afflicted with ailments, which she specifically described.

Under these circumstances, it was a question for the jury to determine as to whether or not appellee's injuries and ailments resulted proximately from appellant's failure to put appellee off at Hatton or from a failure upon its part to keep its waiting room for passengers at Vandervoort in a comfortable condition. If appellant negligently carried appellee by her station of Hatton, or negligently failed to keep its waiting room for passengers at Vandervoort comfortably heated, it would be liable in damages to the passenger for any injury sustained by reason of such failure. Kirby's Digest, § § 6704, 6707 and 6634.

The above facts show that it was a question for the jury to determine whether the alleged failure in either or both of the above alleged particulars was the proximate cause of the injuries of which appellee complains. It was unnecessary for the appellee or any witness in her behalf to testify specifically that the ailments which she described resulted from these alleged negligent causes. That was a deduction which the jury was authorized to make from the testimony. See *St. Louis, I. M. & S. Ry. Co.* v. *Hook,* 83 Ark. 584. And in coming to such conclusion, the jury were not merely exploring realms of speculation, but their findings were only such reasonable and natural inferences as intelligent minds might make from the facts which appellee's testimony tended to prove.

(4)    The court, at the instance of the appellant, instructed the jury, in effect, that even though the plaintiff was carried beyond her station against her consent that she could not recover for any damages she may have suffered by reason of being wet while going from the coach to the waiting room.

Appellant contends that under the evidence the only damage, if any, to appellee aside from the inconvenience and delay, was that caused by reason of her exposure to the rain and getting wet, and that under the above instruction appellant was not liable. True, appellant succeeded in having the court grant the above prayer, but a verdict of the jury will not be set aside where there is substantial evidence to support it, even though the verdict is not in accord with an erroneous instruction. The above instruction was not the law. It is obvious from the amount of damages assessed that the jury found that the injuries of which appellee complains were caused by reason of her being wet. There was no evidence to warrant them in finding the sum of $1,000 merely for the inconvenience and delay of being wrongfully carried by her station.

Now, as we have seen, the jury were warranted in finding that the proximate cause of appellee's getting wet was the fact that she was negligently carried by her station, and in order to reach her father's in time she had to debark at the next station; that in doing so she was exposed to a drenching rain and became wet, resulting in the injuries of which she complains. The proof shows that it was not raining at Hatton at the time the train passed that station, and but for appellant's negligence in carrying her beyond her station she would not have been exposed to the rain. Therefore, as we have shown, the jury might have found from the testimony that the proximate cause of appellee's injuries was the negligent act of carrying her beyond her station, thereby exposing her to the rain which resulted proximately in the injuries for which she seeks damages.

On the ground of alleged negligence in being carried by her station, the jury might have found, under the testimony, that appellee was entitled to recover damages for the injuries she received by reason of being exposed to the wet and cold.

In *St. Louis, I. M. & S. Ry. Co.* v. *Evans,* 94 Ark. 324, where a passenger was wrongfully carried beyond her station, we approved the rule that the amount of her re-

covery should be such sum as the jury should find from the evidence would fairly compensate her for the exposure, inconvenience and physical pain and suffering occasioned by reason of the negligent act. See, also, *St. Louis S. W. Ry. Co.* v. *Knight,* 81 Ark. 429; *Texarkana & Ft. S. Ry. Co.* v. *Anderson,* 67 Ark. 123.

(5)   On the issue as to whether appellant was negligent in failing to keep its waiting room comfortably heated, the court instructed the jury, in effect, that it was the duty of the appellant to exercise ordinary care to keep its waiting room at Vandervoort comfortably warm, and that if appellant failed to exercise such care and appellee suffered injury as the direct result of such failure, they should find for her on that issue.

The court further instructed the jury that ordinary care was such care as a person of ordinary prudence would have exercised under all the circumstances existing at the time and place.

The appellant asked the court to instruct the jury as follows: "The defendant was not required to keep a fire in the waiting room to meet the exigencies or needs brought about by a sudden storm. If the weather was cold and if that cold was due to a sudden storm the defendant would not be required to build a fire so as to meet that sudden demand." The court refused this prayer, and the appellant contends that the court erred in its rulings.

In *St. Louis, I. M. & S. Ry. Co.* v. *Wilson,* 70 Ark. 136, speaking of the duty of railroads in regard to keeping their waiting rooms comfortable, we said: "It was the duty of railroads independent of the statute of March 31, 1899, to provide reasonable accommodations for passengers at their stations. This duty requires the exercise of ordinary care to see that station houses are provided with reasonable appointments for the safety and essential comfort of passengers, or those intending to become passengers, while they are waiting for trains."

The instruction of the court was in conformity with the law as thus announced and fairly submitted the issue as to the duty of appellant to keep its waiting rooms at

all proper times comfortably heated as required by section 6634 of Kirby's Digest. The issue, under the evidence, was for the jury. The instruction given by the court properly declared the law on the subject, and it was not error to refuse appellant's prayer in regard to the exigencies of a sudden storm. There was no testimony tending to prove that the rainstorm to which appellee was exposed on the occasion under review, early in the month of May, was in the nature of an unprecedented exigency or one that could not have been reasonably anticipated during that season of the year. Therefore, the court did not err in refusing to tell the jury that the appellant was not required to keep a fire in its waiting room to meet the exigency of a sudden rainstorm. The prayer for instruction ignored the duty of appellant to do those things which a person of ordinary prudence would have done, considering the season of the year, and the natural conditions of the weather that might be reasonably anticipated during such season. In other words, the prayer rejected ignored the question of ordinary care. But the instruction which the court gave completely covered the subject.

There is no prejudicial error in the record, and the judgment must therefore be affirmed.

McCULLOCH, C. J. (Dissenting.) There was no evidence to justify the finding that appellee's ailment resulted from getting wet when she left the train at Vandervoort or from the failure of appellant's servant to build a fire in the waiting room, and the verdict was based on mere speculation as to the cause of plaintiff's ailment. *St. Louis, I. M. & S. Ry. Co.* v. *Hook,* 83 Ark. 584, was a border-line case—recognized as such by the judges of this court when it was decided—but in that case there was expert testimony of a physician tending to show that the plaintiff contracted or developed pneumonia from exposure caused by negligence of the defendant. In the present case there was no such testimony. No person testified that plaintiff's illness resulted from getting wet or from failure to get to a fire.

SMITH, J., concurs in the dissent.