MODERN WOODMEN OF AMERICA *v.* WHITAKER.

Opinion delivered May 2, 1927.

1.  EVIDENCE—OPINION OF NONEXPERT.—In an action by the beneficiary to recover on a life insurance policy, nonexpert witnesses may state their opinions as to the physical condition of deceased on the day when he took fraternal insurance certificate and stated that his health was good.

2.  INSURANCE—STATEMENT AS REPRESENTATION.—A written statement of the insured when he received a benefit certificate that he was in good health, *held* to be a representation, and not a warranty, though the word "warranty" was used, and the court properly instructed the jury that plaintiff must prove that insured made no misrepresentations to secure the policy.

3.  APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—In an action by the beneficiary to recover on a life insurance policy, the jury's finding that deceased was in good health when he received the policy and stated that his health was good, *held* conclusive, in view of the evidence, where the issue was submitted on instruc-

tions that plaintiff must prove that no misrepresentation was made, and that defendant must prove that deceased was sick when he received the policy.

Appeal from Boone Circuit Court; *J. M. Shinn,* Judge; affirmed.

*Truman Plantz, Geo. G. Perrin, F. M. McDavid* and *Shouse & Rowland,* for appellant.

*Woods & Greenhaw* and *E. G. Mitchell,* for appellee.

MEHAFFY, J.   Thomas W. Whitaker, on the 2d day of February, 1925, made application for membership and benefits in the Modern Woodmen of America, a fraternal benefit society, with its local Camp No. 13665, at Harrison, Arkansas, and executed the usual application form. On February 11, 1925, his application was acted on and certificate issued and forwarded to the clerk at Harrison, Arkansas, where it remained until the 6th day of April, 1925, when it was delivered to the insured by Cleve Coffman, clerk of the Modern Woodmen at the local camp at Harrison, Arkansas.

The application signed by the insured stated that the answers were adopted as his own, and that he warranted that they were full, complete, and literally true, and that he agreed that the exact, literal truth of each should be a condition precedent to any binding contract issued upon the faith of said answers and statements.

We deem it unnecessary to set the application out in full, because there is no controversy about the insured's condition of health at that time.   The benefit certificate issued to him was as follows:

"BENEFIT CERTIFICATE MODERN WOODMEN OF AMERICA.

"No. 3201343                    Amount, $1000

"Age 20                    Rate, 85 Cents.

"A fraternal beneficiary society incorporated, organized and doing business under the laws of the State of Illinois.

"It is hereby certified that neighbor Thomas W. Whitaker, a member of Camp No. 13665 of Modern Woodmen of America, located at Harrison, Arkansas, if

he shall pay benefit fund assessments in accordance with the provisions of the existing by-laws of this society, or as such by-laws hereafter may be changed, added to, or amended, is, while in good standing, entitled to the privileges of the society, and his beneficiary or bene- ficiaries hereinafter named shall, in case of his death, while a beneficial member of this society in good standing, be entitled to the privileges of the society, and his bene- ficiary or beneficiaries hereinafter named shall, in case of his death while a beneficial member of this society in good standing, be entitled to participate in the benefit fund of this society to the amount of one (1) thousand dollars, without interest, to be paid to said beneficiary or bene- ficiaries, to-wit, Laura D. Whitaker, related to said mem- ber as mother; provided, however, that all the conditions and agreements contained in said member's application for beneficial membership and in this certificate, and in the by-laws of the society, as said by-laws now exist, or hereafter may be added to, modified, amended, or enacted, shall be fully complied with; and provided further that, if any beneficiary named in this certificate shall die at the same time, or in a common disaster, or prior to the death of said member, or in the event of the disqualifica- tion of such beneficiary under the provisions of the by-laws of this society, now in force or as hereafter amended or enacted, and if such member shall have failed to have had another beneficiary named in the place and stead of such deceased or disqualified beneficiary, then the amount specified to be paid such deceased or disquali- fied beneficiary, under this benefit certificate, shall be payable in accordance with the by-laws of this society in force at the time of the death of said member.

"This benefit certificate is issued and accepted only upon the foregoing conditions and the express warranties, conditions and agreements printed on the back of this certificate, there designated as 'Conditions,' and num- bered from one to twelve inclusive, which said war- ranties, conditions and agreements are hereby made a

part of this benefit certificate to the same effect and extent as if incorporated herein over the signature hereto.

"In witness whereof the said Modern Woodmen of America has, by its head consul and head clerk, signed and caused the corporate seal of said corporation to be affixed to this certificate, at the city of Rock Island, in the State of Illinois, this 11th day of February, 1925.

(Signed) "J. G. Ray, Head Clerk.

"A. R. Talbot, Head Consul.

"Member adopted 6th day of April, 1925, and certificate delivered this 6th day of April, 1925.

(Signed) "G. C. Coffman, Clerk.

"D. Brooks, Consul.

"Harrison Camp No. 13665, M. W. of A."

On the 6th day of April, when the clerk of the camp delivered the policy to the insured, insured signed the following certificate: "I have read and hereby accept the above benefit certificate and agree to all the conditions therein contained and referred to. I hereby warrant I am now in good health. I agree and understand that this certificate is not binding upon the society until signed by me, nor unless I am now in good health."

The defendant pleaded all the statements and warranties as a defense, but it is unnecessary to set out the pleadings at length.

The appellant, who was plaintiff below, testified, in substance, that she was the mother of the deceased, Thomas W. Whitaker, who died on May 6, 1925, at her home in Harrison. She testified that he had a policy in the defendant company, which he gave her for safekeeping. She said the company refused to pay the policy upon his death, and she brought suit. He turned the policy over to her exactly a month before his death. He died on the 6th day of May. The benefit certificate copied above was here introduced in evidence. She testified that they solicited her boy to join the fraternity on February 2, and he was in sound health, 19 years old, and

lived at home, and was her only boy. She stated he was in good health.˒ That the signature at the bottom of the certificate or policy was the signature of her son. She further testified that the insured was called upon by Dr. Poyner Sunday before the delivery of the policy the following day. That Dr. Poyner was called to see her daughter, and her son complained of feeling bad, but he did not want to go to bed and did not want any medicine. The doctor was called back that evening to see the insured on account of bleeding nose. The boy was up the next day, and was in good health. He worked some the day the policy was delivered, ate his breakfast, and was feeling all right, and nobody could see anything wrong with him; he was all right every way.

Cleve Coffman, clerk of the camp, testified, in substance, that he was the cashier of the First National Bank at Harrison, and clerk of the Modern Woodmen at the local camp there. That he issued receipts for the payment of dues to members and delivered certificates of membership and benefits. That he delivered and signed the certificate on which the suit was based. The insured was reported as a member April 4 and report was sent in to the head clerk in May. The policy was delivered to the insured April 6. The insured made payment of his dues on April 6 in person, and the certificate was delivered to him in person. Here the proofs of death were introduced, and the witness continued, that he notified the head clerk of the death of the insured. Insured was initiated on the 2nd day of February, but did not pay any money until the 6th of April, when his policy was delivered. He said he did not deliver the certificate because he supposed the boy did not have any money.

Dr. J. H. Poyner was called by the defendant, and testified, in substance, that he was a regular practicing physician in Harrison, and had been practicing for thirteen years; that he visited Thomas W. Whitaker on the 5th of April, 1925, at his home, examined him, and

found that he had influenza and also leakage of the heart; that he visited him twice on this day, the last time being in the night, when his nose was bleeding; he could hear the leakage of his heart very distinctly. He had treated a number of cases of leakage of the heart; that leakage of the heart is usually the result of some other disease; that the insured had a pretty bad leakage of the heart; that he did not consider him a person in good health at said time, and that he would not recommend a man in his condition as a good insurance risk.

Dr. J. H. Fowler testified, in substance, that he was a practicing physician in Harrison, and had been for twenty-five years. That he treated insured in his last illness, being called first on April 18. That he found him suffering pain in his foot and leg, and also found him suffering from a heart lesion, or a murmur when he breathed. He could not tell how long he had been in this condition. He did not consider a person with leakage of the heart as a good risk for insurance. He had known this boy for many years and could not tell anything was wrong with him until he was called to see him. He said the flu is one of the common causes of heart affection; if you see a boy on the street you could not tell whether he had heart trouble by looking at him; he might have it and you could not tell it.

Defendant then offered its answer in evidence, and pleaded the clauses of the policy with reference to warranties, etc.

The plaintiff then recalled Laura D. Whitaker, who testified, in substance, that the insured had never been sick until his last sickness; that he never took any medicine; that he objected to them sending for Dr. Poyner and that he objected to taking medicine. That he worked for different parties after the 5th day of April; that he was not sick or in bad health on the 6th day of April or any day thereafter, until Dr. Fowler came to see him on the 18th.

Wm. Cole, J. W. Wynn, Oscar Rogers, Effie Whitaker, Jane Whitaker and Mrs. J. B. Ritchie all tes-

tified that they knew the boy intimately, and that he was seemingly in good health and did not give any indication of heart trouble.

Cleve Coffman was recalled, and he and Rex Poyner both testified that they saw the insured after April 5 and prior to his death, and that he was in good health.

Dr. C. M. Routh testified, in substance, that he was a practicing physician, and had been practicing in Harrison since 1902. That in 1925, in February, he was district medical examiner for insurance for the Modern Woodmen, and examined the insured, making a close examination, and found him in good health at the time.

Vance Holt and William Cole both testified, in substance, that they saw the insured in February, March and April, 1925, and he appeared to be in perfect health and physical strength.

Dr. Fowler was recalled by the plaintiff, and testified, in substance, that a person might have any kind of fever that might cause temporary regurgitation of the heart; that, if a person were examined in February and found in good health and no heart trouble, and on the 5th day of April found to have flu and regurgitation, and on the 6th was up and seemingly in good health, having the ability to climb trees and jump to the ground without any apparent injury, and seemed to be in good condition and able to perform manual labor, and on the 5th of April had leakage of the heart, he would think it was temporary. That there was nothing in insured's condition when he examined him that showed organic heart trouble. That when he visited him on the 18th of April he found that the deceased had rheumatism and organic heart lesion.

Dr. L. Kirby was called by the defendant, and testified, in substance, that he had been practicing medicine in Harrison since the 21st of October, 1871; that leakage of the heart is becoming a common disease, and causes a good many deaths; that a doctor can tell by putting an ear down or using a stethoscope whether a person has

heart leakage; that one may have heart leakage and may be up and doing manual labor, but he did not regard such a person in good health. That, assuming that on the 5th of April the person was found to have the same disease and had been sick several days before the 18th, and supposing that he died on the 6th day of May, of rheumatism and organic heart lesion, in his opinion, as a doctor, he had leakage of the heart all the time from April 5 until the date of his death; he said it is sometimes a little hard to determine whether regurgitation of the heart is chronic or temporary; that it might be temporary under the hypothetical facts stated in this case, or it might not; that, if the boy was able to go on with his work and perform the physical feats related in the hypothetical question, it would look like, on the surface, that he did not have heart trouble, but, on the other hand, it would be probable that he would have such trouble.

The court, upon its own motion, gave the following instructions:

"Gentlemen of the Jury: In this suit Laura D. Whitaker seeks to recover from the Modern Woodmen on a certain policy that was issued to her son, Thomas W. Whitaker, some time in April, possibly in the year 1925. She alleges in her complaint that her son, Thomas W. Whitaker, was insured, his life was insured with this defendant company, and it has been admitted that this policy was issued to him and under the rules and regulations and by-laws of the company, which are all considered as a part of the contract in this case; that is, the application and by-laws of the company are all a part of the contract or policy. It is admitted that he took out the policy and application for it, and all the allegations in the complaint had been admitted, except that the defendant says and alleges in its answer, at the time he accepted it, which was not effective or could not be effective until the time it was accepted by the insured, and it was claimed by the defendant in its answer, at the time he accepted this insurance policy on the 6th day of

April, 1925, that he was not in good health at the time, and therefore was not an insurable risk. Those are the facts, gentlemen, you would be called upon to try.''

On request of the plaintiff, and over the objection and exceptions of the defendant, the court gave the following instructions:

''Instruction No. 1. In this case Mrs. Laura D. Whitaker is plaintiff and is seeking to recover $1,000 and 6 per cent. interest on the same from and after defendant rejected the claim. The defendant denies liability, and alleges misrepresentation upon the part of the assured, Thomas W. Whitaker, as to the condition of his health at the time of the delivery of the policy, and that is one of the issues you are called upon to try. It is agreed that the plaintiff is the mother of the assured and the beneficiary under the policy.

''Instruction No. 2. Before the plaintiff can recover the burden is hers to show by a preponderance of the testimony that her son had a policy of $1,000; had paid the usual and required rate; had made no misrepresentations to procure the policy; and that he died during the life of the policy. If you so find, your verdict will be for the plaintiff.

''Instruction No. 3. The deceased made his application for his policy of insurance and the policy was issued and delivered to him, and that places the burden on the defendant to establish by a preponderance of the evidence that the deceased had any physical ailment that would avoid the terms of the policy, and, unless the defendant established the same by a preponderance of the evidence, you will find for the plaintiff.

''I instruct you that the physical condition of the insured on the 18th day of April, 1925, when Dr. Fowler was called to treat him, can only be considered by you for the purpose of determining his physical condition at the time said policy was delivered to him, and for no other purpose.''

The defendant requested a peremptory instruction, which the court refused to give, and then, at the request

of the defendant, the court gave the following instructions:

"Defendant's requested instruction. In this case, gentlemen, there is but one issue for you to determine, and that is whether Thomas W. Whitaker was, on the 6th day of April, 1925, the date of the delivery of the certificate, in good health. The defendant pleads that on said date the applicant was suffering with influenza and an affection of the heart. Upon this issue the burden is upon the defendant. If you believe from a preponderance of the evidence that the applicant, Thomas W. Whitaker, was on said date, April 6, 1925, affected with influenza and leakage of the heart, or either of such diseases, then in that event you must find for the defendant; and it makes no difference whether deceased knew of such condition or not."

The defendant filed motion for a new trial, urging several errors, but the instruction that it asked and which was given by the court told the jury that there was but one issue for them to determine, and that that was whether Thomas W. Whitaker was, on the 6th day of April, the date of the delivery of the certificate, in good health.

In addition to the one question that counsel states is for the jury, they argue the question of the admissibility of the evidence, and very earnestly contend that non-expert witnesses cannot state their opinion as to the physical condition of the deceased, but can only testify to facts, that is, what he did and said and how he acted, and that, when they have testified to these facts, it is then the province of the jury to determine the issue as to his health. They call attention to a number of cases in which this court has held that, as a general rule, the witness must state only facts and not state the conclusions at which he has arrived from such facts. In speaking of the testimony of non-expert witnesses who testified that one appeared to be suffering, looked like she was sick, seemed to be in bad health, and that, a short time before the injury, she appeared to be in very good health, this court said:

"The testimony comes within the rule approved by this court in *St. Louis, I. M. & S. R. Co.* v. *Osborne,* 95 Ark. 310-317, 129 S. W. 537, where we held that it was not error to allow non-expert witnesses to state facts within their knowledge and observation as to the plaintiff's physical condition, habits, etc., before and after the date of the alleged injury. Judge Elliott, in his treatise on Evidence, volume 1, § 679, states: 'An ordinary witness may testify in a proper case as to the state of his health. Thus, he may testify that he has suffered pain, or state his physical condition generally. * * * So, such a witness may testify that another person seemed to be sick, suffering pain, nervous, or in good or bad health.' See also § § 675 and 676.

Where one person is acquainted with another and they come in contact with each other frequently, it is not a matter of expert knowledge for one to tell whether the other appears to be sick or well. These are matters of common experience and observation. And a non-expert witness, after stating the facts upon which his opinion is based, may even give his opinion in such matters." *K. C. S. R. Co.* v. *Cobb,* 118 Ark. 569, 178 S. W. 383.

There are numerous cases to the same effect. This court has also frequently held that non-expert witnesses may testify whether, in their opinion, a person is sane or insane, after giving the facts upon which they base their opinion. As to whether one is in good health or not is a matter of opinion. The experts themselves do not know, but can merely give their opinion, and persons that constantly associate with one would probably be able to tell more accurately whether one was in good health than an expert who did not associate with the person frequently. At any rate, we think that it was proper for the witnesses to be permitted to testify as to whether or not the deceased was in good health on the 6th day of April, the day the policy was delivered.

A physician testified that, on the 5th day of April, the day before the policy was delivered, he attended the

deceased, and that he had a leaky heart, but not only this physician, but all others who testified at all, testified that this might be chronic or temporary.  But the physicians testified as to his condition of health, and these non-experts testified, and it was then submitted to the jury on an instruction requested by the defendant telling them that there was but one issue, and that was whether Whitaker was, on the 6th day of April, in good health. We think the court did not err in permitting the testimony of the non-expert witnesses.

It is next contended by the appellant that the counsel for the appellee and the court erred in their failure to distinguish between false representations and warranties.  There is no controversy about the good health of the applicant at the time the application was made. It is not contended that at that time he was not in good health.  But it is contended that, on the 6th day of April, the day the policy was delivered, he signed a certificate, and that that certificate was a warranty that he was in good health.  It is not entirely clear from the record in this case whether that certificate was written on the benefit certificate or not, but we think, from the appearance of the record and the testimony, that it was. It was a statement as follows: "I have read and hereby accept the above benefit certificate, and agree to all the conditions therein contained and referred to.  I hereby warrant I am now in good health.  I agree and understand that this certificate is not binding upon the society until signed by me, nor unless I am now in good health. Thomas W. Whitaker."

It is contended that the statement in the above certificate, "I hereby warrant I am now in good health," constitutes a warranty, and therefore must be true. The testimony of the clerk who delivered the policy shows that Whitaker came to the bank, and the policy was delivered to him, and he signed it, and if there was anything to indicate that he was not in good health at the time, this witness did not mention the fact, and was not asked about it by either party.  He was the clerk of the

camp, whose duty it was to deliver the policy only in case the insured was in good health at the time.    He delivered it to him on that day, evidently believing that he was in good health.

This court has said: "Statements or agreements of the insured which are inserted or referred to in a policy are not always warranties.    Whether they be warranties or representations depends upon the language in which they are expressed, the apparent purpose of the insertion or reference, and sometimes upon the relation they bear to other parts of the policy or application.    All reasonable doubts as to whether they be warranties or not should be resolved in favor of the assured.    *    *    * A warranty, being a part of the contract itself, as contradistinguished from a representation, which is a mere inducement to the policy, must necessarily appear in the contract itself in express terms or be so referred to in the policy as to clearly indicate that the parties intended it to form a part of the contract." *Metropolitan Life Ins. Co.* v. *Johnson,* 105 Ark. 101, 150 S. W. 393.

"The doctrine or rule as to warranties in contracts of insurance, as stated in the earlier cases, is, in substance, that, if any warranted statement in the application is shown not to be the exact and literal truth, the insurance is forfeited, and that this result must follow even though the statement be made in the utmost good faith, and relates to a fact which is in no manner material to the risk against which the insurance is taken.    In most jurisdictions, where the Legislature has not interfered to change it, the same statement of the rule is still adhered to, but its manifest harshness, to say nothing of its absurd extreme of technicality, has led the court to greatly limit its application, by emphasizing the distinction between warranties and representations, and by holding strictly to that other rule, which requires contracts of insurance to be taken most strongly against the insurer, and that courts should so interpret the contract, if it be fairly possible, as to avoid a forfeiture.    It is now settled that the use of the word 'warrant' or 'war-

ranty' in the application or policy is of itself by no means conclusive upon the question whether, in view of the entire record, any given answer or statement of the insured is to be given technical effect as a warranty, rather than as a representation.''

The court cites many cases, and then proceeds: ''Indeed, in the Port Blakely Mill Company case, *supra,* the court goes to the extent of saying that the word warranty is of such general signification and of such general and discursive use that, except as it may be restrained or explained by the writing as a whole, it is absolutely without legal significance. Again, it is said that the rule is universal that statements contained in the application will not be construed to be warranties, if elsewhere in the contract there can be found reason to suppose that such was not the clear understanding of the parties. * * * We do not overlook the fact that the warranty is repeated a number of times throughout the application, and that it is very sweeping in form, and that it is so repeated without the qualification which we have noted. * * * If such a provision were enforceable regardless of good faith of the insured and regardless of his knowledge of hidden infirmities, no person could know whether he was insured or not. The form of the question necessarily calls for an opinion, and an agreement to warrant the truthfulness of the answer is no more than to warrant that the applicant will make a *bona fide* answer as to his opinion of the character of his ailment.'' *Teeple* v. *Fraternal Bankers' Reserve Soc.,* 179 Ia. 65, 161 N. W. 102, L. R. A. 1917C 858.

The defendants then argue that there is no question about the good faith of Whitaker. They did not claim that his statement was not what he thought was true, and, while the authorities are divided on the question, many authorities hold that a warranty as to good health is merely a statement of opinion, and, if made in good faith and the applicant believes his statement to be true, this is a compliance. In other words, that a warranty as to good health is warranty of the good faith of the

applicant. In speaking of statements with reference to good health it has been said:

"Conceding that the representations contained in the application for the policy were made warranties by the reference to them in the policy, still we cannot say that they were untrue. The application was not introduced, and we are not advised by the evidence of its contents. We cannot determine that there was either misrepresentation or concealment of facts. For aught that appears in this record, there may have been a full disclosure of every fact material to the risk, and a true answer to every question propounded. * * * A warranty is in the nature of a condition precedent; it must appear on the face of the policy; or, if on another part of it, or on a paper physically attached, it must appear that the statements were intended to form a part of the policy; or, if on another paper, they must be so referred to in the policy as clearly to indicate that the parties intended them to form a part of it. A warranty cannot be created nor extended by construction." *Mutual Benefit Life Ins. Co.* v. *Robertson,* 59 Ill. 123, 14 Am. Rep. 8.

Again it has been said: "The practical operation of such literal warranties is so often harsh and unfair that courts require their existence to be evidenced clearly and unequivocally, and are not inclined to allow it to rest upon a mere verbal interpretation where a reasonable construction of a contract as a whole will authorize a different meaning. All reasonable doubts as to whether statements inserted in or referred to in an insurance policy are warranties or representations should be resolved in favor of the insured. By statute at least two States (Pennsylvania and Ohio) have eliminated warranties from the law of insurance in those States, and the constitutionality of such statutes has been sustained by the Supreme Court of the United States." *Spence* v. *Central Accident Ins. Co.,* 86 N. E. 104, 236 Ill. 444, 19 L. R. A. (N. S.) 88.

It will be remembered that the appellant's physician not only examined the applicant thoroughly, but stated

that he had known him all of his life, and he knew at the time he examined him whether or not he was in good health, and that he stated that at that time he was in good health. After that the policy was issued. It was delivered to the insured at the Bank of Harrison when -the insured was apparently in good health. The statement of the insured was evidently not in the face of the policy, but he signed a statement to the effect that he was in good health at that time, and, while the statement itself contains the word "warranty", we think it was not a warranty further than that the insured warranted the truth of his answer. That is, that he believed it to be true. Being made at the time it was, under the circumstances, we think it was a representation and not a warranty, although the word "warranty" was used.

As has been said by some other courts, if a statement of the assured when the policy was delivered that he was in good health, believing that his statement was the absolute truth, would avoid the policy if it turned out that there was some unknown ailment, then no one would know whether he had insurance or not. Our conclusion is that it was not a warranty but a representation.

The appellant next contends that the court erred in giving instructions to the jury. The court, at the request of the appellee, gave the following instruction: "Before the plaintiff can recover, the burden is hers to show by a preponderance of the testimony that her son had a policy of $1,000; had paid the usual and required rate; had made no misrepresentation to procure the policy, and that he died during the life of the policy. If you so find, your verdict will be for the plaintiff."

The appellant says that it is not alleging any misrepresentations, but alleges a breach of warranty. Since we hold that the clause in the statement signed by the insured was a representation and not a warranty, the appellant was contending and did contend that the statement of the insured was untrue, and therefore in effect contended that it was a misrepresentation. But the appellant itself requested and the court gave the follow-

ing instruction: "In this case, gentlemen, there is but one issue for you to determine, and that is whether Thomas W. Whitaker was, on the 6th day of April, 1925, the date of the delivery of the certificate, in good health. The defendant pleads that, on said date, the applicant was suffering with influenza and an affection of the heart. Upon this issue the burden is upon the defendant. If you believe from a preponderance of the evidence that the applicant, Thomas W. Whitaker, was, on said date, April 6, 1925, affected with the influenza and leakage of the heart, or either of such diseases, then in that event you must find for the defendant, and it makes no difference whether deceased knew of such condition or not."

This instruction submitted to the jury the one issue of whether Whitaker was in good health at the time he received the policy, and we think it was more favorable to the appellant than it was entitled to. Our conclusion is that the issue was submitted to the jury under proper instructions, and their finding on the question of fact is conclusive. The judgment is therefore affirmed.

Mr. Justice SMITH dissents.