UNIONAID LIFE INSURANCE COMPANY *v.* MUNFORD.

Opinion delivered February 3, 1930.

*J. V. Walker, Robert Bailey* and *Duty & Duty,* for appellant.

*C. C. Wait,* for appellee.

MEHAFFY, J. This action was begun by appellee to recover on an insurance policy issued by the appellant to W. W. Munford, on the 20th day of March, 1928.

The deceased, W. W. Munford, on the 26th day of April, 1916, made application for a certificate of membership in the Mutualaid Union, an assessment company, and the certificate issued by this company to Munford, among other things, provided that, upon the death of the applicant within the first six months after the date of the certificate, the company would pay $75; if within the calendar month next succeeding, the sum of $87.50, and the amount thereafter to increase each calendar month in the sum of $12.50 for and during the term of eighty months. And that after the expiration of eighty months, upon condition only that prompt and due payments be made

to the home office of the Mutualaid Union of all assessments that may be made under the rules and by-laws, that it would pay $1,000.

W. W. Munford paid all dues and assessments from that time until the reinsurance agreement between the appellant and the Mutualaid Union.

On December 14, 1926, the appellant entered into an agreement with the Mutualaid Union by which it was agreed, in substance, that the members of the membership of the reinsured association is taken over by the reinsuring company, its successors or assigns, under the terms and conditions set forth in the contract. It provides that all living contributing members and policyholders of the reinsured association in good standing in said association on the first day of April, 1927, are hereby taken over, and the liability of the reinsured association to such members under their certificates of membership is assumed by the reinsuring company under the terms and conditions herein set forth, in consideration of such members complying all and singular with the terms and conditions of this contract and with the rules, regulations, laws and requirements of the reinsuring company.

It also provided that the reinsuring company should be subrogated to all the powers, privileges, authority, rights and good will enjoyed by the reinsured association, including the authority delegated under the constitution and by-laws of the reinsured association for the government and control of its members, and provided that it should be subrogated to each and every defense that would have been available to the reinsured association in the conduct of its business.

Section three of the contract provided that all living members of the reinsured association, that is, the Mutualaid Union, in good standing, should pay to the reinsuring company, the appellant, contributions and assessments that they were then paying to the Mutualaid Union.

And a statement of the Unionaid Life Insurance Company was delivered to W. W. Munford, advising him

of the reinsurance contract, and that it assumed all liabilities under his certificate.

Sometime in March he received a letter from the appellant with reference to exchanging his certificate for a policy in the appellant company. In response to this letter, he made an application for the change, and sent in his insurance certificate issued by the Mutualaid Union, as directed by appellant, to be canceled.

On the 20th day of March the appellant canceled his old certificate, issued a new policy, and sent it to their agent to be delivered to Munford. The evidence, however, shows that they directed him not to deliver it until Munford had signed an application which was presented to him, in which it was said he did not have stomach trouble or pellagra. This was presented to him three days after his old certificate had been canceled, and after the new policy had been issued.

He answered all the questions, and, among other things, stated that he did not have any disease of the stomach, or cancer, or pellagra.

It appears that on the 23rd day of March, the same day that his policy was taken to him, and he signed this application in which he stated that he was in good health, that he went to see Doctor Smith, of Russellville, and complained of his stomach. Dr. Smith, at that time, examined him, but told him that he would have to have an X-ray picture made in order to determine what his ailment was. Thereafter, the X-ray picture was made, and it showed some ailment that the doctor thought required an operation, and he performed the operation, and a short while after the operation Munford died of pellagra.

It is contended that Mr. Munford, on the day he signed the application, warranted that he was in good health, and had no physical defects at that time; and appellant states he was then in a serious condition, and was fully aware of the fact. There is no evidence at all that he had any kind of physical ailment at the time he secured the certificate in the Mutualaid Union in 1916. And when

the company wrote him to send in his policy, together with an application to be made on a blank which was sent by the company, he had a right to assume that that was all he had to do. And, so far as the evidence shows, at that time he at least thought that he was in good health.

It is contended by the appellant that his statements in this application were warranties, and numerous authorities are cited, among others, § 14 of act 139 of the Acts of 1925. That section reads as follows:

"Statements, representations and answers on the part of applicants for membership as to questions of age, condition of health and eligibility shall be construed as warranties on the part of the applicant, and such applicant bound thereby, and shall constitute a part consideration for issuance of the policy or certificate of membership."

The above section has no application. The appellant is not an assessment company, not organized under the act referred to, and that act is an act to define assessment, liability, health and accident associations or companies, industrial insurance companies, to provide how same may be organized, and transact business in this State, for proper regulation of the same, and for other purposes.

The appellant, as we have said, is not an assessment company, and the act referred to has reference to assessment companies only, or such companies as are mentioned in the act, and the appellant is not in that class.

The court was justified in finding that, when Munford applied to the doctor, he did not think he had any ailment mentioned in the application, or that he did not have any serious ailment at all. And if he, in good faith, answered the questions, or if he believed the answers he gave were true, the fact that they turned out to be untrue would not affect the policy. *United States Annuity & Life Ins. Co.* v. *Park,* 129 Ark. 43, 195 S. W. 392, 1 A. L. R. 1254.

There is no law making statements, representions and answers as to condition of health or eligibility war-

ranties in an application to a company of this kind. And there was no law at the time Munford made his application to the Mutualaid Union making statements of this kind of warranties. The difference between a representation and a warranty is that a warranty must be true, and a representation is not required to be true, but it is only required that the applicant state what he honestly believes to be the truth. This question was discussed at length in the case of *Modern Woodmen of America* v. *Whittaker*, 173 Ark. 921, 293 S. W. 1145, and numerous authorities cited.

It is not necessary here to repeat the discussion or review the authorities reviewed in that case. In that case, however, we said, among other things:

"A warranty is in the nature of a condition precedent; it must appear on the face of the policy; or, if on another part of it, or on a paper physically attached, it must appear that the statements were intended to form a part of the policy; or, if on another paper, they must be so referred to in the policy as clearly to indicate that the parties intended them to form a part of it. A warranty cannot be created nor extended by construction."

The appellant company entered into a contract of reinsurance with the Mutualaid Union, and in that contract section seven is as follows: "The members of the reinsured association hereby admitted shall be accepted by the reinsuring company upon the original application heretofore made to such association, and the reinsuring company shall be subrogated to each and every defense that would have been available to the reinsured association, and it is hereby expressly understood and agreed that such members taken over are subject to the conditions and limitations set forth in this contract, and the reinsuring company shall not be liable to such members or their beneficiaries in any other manner, except as herein provided."

The law under which the reinsurance contract was made provided, among other things, that the membership

or policyholders of consolidating associations or companies shall be bound in all respects by the contract of consolidation as filed with the insurance commissioner of the State. Acts 1925, No. 137, § 8. It is also provided that the general insurance laws of this State or [and] any laws governing the organization and control of mutual assessment companies shall not apply to or govern companies organized under this act. *Id.*, § 16.

At the time of the reinsurance contract and at the time that Munford made application to change his certificate for a policy in the Unionaid Life Insurance Company, he had a certificate issued by the Mutualaid Union entitling him to $75 if he died within six months after it was issued, and to an additional sum of $12.50 each month thereafter until he had paid for eighty months, and then he was entitled to $1,000. It is true the by-laws of that association provided that this should be raised by assessment on the members, but the reinsurance contract certainly did not contemplate that one should pay for ten or fifteen years, and continue to pay to the reinsuring company, and be limited in recovery to the amount paid by those persons who belonged to his circle. There might be none of them left or there might be a very few. But, in either event, whether there were many or none at all, the member would have to continue to pay his assessments.

Appellant could not secure the certificate from Munford, cancel it, and then require him thereafter to make any statements with reference to his health as a condition precedent to delivering him his policy. He had a right to the policy under the reinsurance contract by complying with the terms of the letter written to him by the appellant. He had signed that application, sent the money required, and it canceled his policy and issued another, and it was its duty to deliver it to him.

In the view we take of the case, however, it is immaterial whether the policy issued by appellant was void or not. If it was valid, as we hold that it was, then he can recover on the policy. If it was not valid, then he

would be entitled to recover on his certificate, and, under the evidence in this case, we think the recovery would be the same.

The statements made in the application signed on the 23d day of March were made after the policy was issued, and after Munford had done all that he had been requested to do in order to secure the change, but the statements in this application were not warranties.

We have held in the case of *Modern Woodmen of America* v. *Whittaker, supra,* that such statements are not warranties, but are representations. And, if the applicant believed them to be true, it would not avoid the policy if they afterwards turned out to be untrue. Munford had been going about his business as usual. It is true the evidence shows that he complained of his stomach and went to see Dr. Smith, but he evidently did not think he had any serious ailment. He certainly did not know he had pellagra.

One of appellant's witnesses, Dr. Ross, testified that it was his stomach, constipation and indigestion, and he gave him a treatment for that. Certainly Munford did not think this constipation or indigestion was any serious trouble, but must have thought it was temporary. He consulted this witness just a short time before he went to Dr. Smith. Nothing was said by Dr. Ross about pellagra.

Appellant then put on the stand Dr. Scarlett. He testified that pellagra, the disease that caused the death of Munford, is not always readily recognizable. A great many of the affected discover it themselves, and this doctor testified from the history of the disease he would say that he had pellagra.

Dr. Smith testified that when Munford came to him he complained of pain in his stomach. He made an examination, and that he came back to see him on the 4th day of April. He performed the operation on the 14th day of April; but Dr. Smith testified at his first examination that he did not determine what was the matter with him.

1056

One of the physicians testified that pellagra was not hard to detect, but that you might not notice it very much for two or three years. At any rate, neither of the doctors at first discovered that it was pellagra, and they did not know it was. It would be unreasonable to assume that Munford knew that he had pellagra when the doctors did not know it. He had been at work continuously, and, while he may have had pellagra all that time, he had never been told so by a doctor, and he evidently did not know it. And he must have thought that whatever ailment he had was not a serious trouble. Besides that, the agent who delivered him the policy had known him for years and lived just across the street from him, and he testified that he collected his dues every month. He also testified that he could not say what Munford's health was, but that he was tending to his business, and, with his knowledge of him and long association with him, he did not detect any difference in his condition of health on that day—the day that the policy was delivered—to what he had known for years.

The company did not require medical examination, but simply gave directions to its agent, who had known him for years and who, when he went to deliver the policy, believed him to be in good health, saw no difference between him then and for years.

The statements made being representations and not warranties, the evidence was sufficient to justify the court in holding that the answers were made in good faith.

Finding no error, the judgment is affirmed.